DORLAN *v.* GUIE.[1]

*(Circuit Court, E. D. Pennsylvania.* November 10, 1885.)

PATENTS FOR INVENTIONS—INFRINGEMENT—LETTERS PATENT No. 127,858.
    When, from the evidence, it appears that the defendant is simply pursuing the same process of manufacturing which he followed before the patent in question was issued, the court will not restrain him from continuing to use the same means

In Equity.
*Farley & Hollingsworth,* for complainant.
*MacVeagh & Bispham,* for respondent.
BUTLER, J. The plaintiff's patent is, in substance, for the use of chloride of lime, ("in large or small quantities,") as a sizing ingredient, (in combination with other materials ordinarily employed for sizing,) in the manufacture of pulp-size paper.

The several claims read as follows:

(1) As a sizing ingredient, chloride of lime, or its equivalent, substantially as and for the purpose set forth. (2) Chloride of lime, or its equivalent, in quantities large or small, as a new and essential sizing ingredient or material, and as a basis or principle in any composition of other sizing ingredients in and for sizing paper-stock materials, or paper pulps to make pulp-sized papers, and for sizing any other article that has required or may require any

[1] Reported by C. B. Taylor, Esq., of the Philadelphia bar.

degree of a poreless gum-size, or of a water-proof character, imparted thereto or therein, substantially as and for the purpose described. (3) The process of sizing paper-stock materials and paper pulps to make pulp-sized papers, when chloride of lime, or its equivalent, shall compose a constituent part of the composition or mass of other sizing ingredients or materials, substantially as and for the purpose described. (4) Chloride of lime as a sizing ingredient, in combination with the resins, soaps, starches, oils, tallows, and alums, separately or collectively, substantially as and for the purpose set forth.

The common method pursued in the manufacture of pulp-size paper, at the date of the patent, and for many years previous, embraced the use of chloride of lime. Its work in the process was bleaching. The common opinion being adverse to its retention after this work was performed, (in consequence of a belief that its presence was detrimental to the sizing,) the usual, if not universal, practice was to wash it out before the sizing materials were applied. Of course it was not all removed. To get rid of it entirely, by the ordinary method of washing, was impossible. More or less remained,—depending upon the use for which the paper was designed, and the amount of care bestowed in the washing. Mr. Dorlan having discovered, as he believed, that this common opinion was erroneous,—that the presence of chloride of lime was not only not injurious to the sizing, but highly beneficial,—applied for and obtained his patent. Under it he asserts the right to compel manufacturers of such paper to remove the chloride of lime introduced for bleaching, before the application of ordinary sizing ingredients. Can the patent (if valid) be accorded such a scope? If such is the right intended to be conferred, is the patent valid? The use of chloride of lime in the manufacture of pulp-sized paper is not objected to; and could not be, for the use is, probably, as old as the art itself. The objection is that it is not extracted from the pulp and excluded at a particular stage in the process, so as to avoid combination with the sizing ingredients. The objection is, not that something is done which should not be, but that something is omitted, whereby the patent is infringed. This certainly is a novel proposition. Of course the objection to retaining the chloride of lime does not extend to the quantity formerly retained. It would be difficult, therefore, to ascertain and fix the limit, if no other difficulties existed. Notwithstanding the novelty of the position, however, it may, possibly, be sound. As it is unnecessary to pass upon it at present, we should not do so.

The defendant's answer asserts, substantially, that long before the date of the patent he and other paper manufacturers pursued the method of manufacturing pulp-size paper here complained of,—allowing the chloride of lime, introduced for bleaching, to remain. If the defendant pursued this method, it is unnecessary to inquire into the methods of others. Equity will not interfere to restrain a continuance of the defendant's business or manufacture as pursued anterior to the patent. It is immaterial why he allowed the chloride of lime to remain in—if he did so. Whether he believed it to be beneficial or in-

jurious to the sizing, or without effect either way in this respect, is of no consequence. If it was beneficial he got the benefit, and is entitled to such as may arise from a continuance of his method of manufacture, notwithstanding the plaintiff's patent. That he was unaware of the benefit, and that it, consequently, was accidental, argues nothing against his right to pursue his business as he had been accustomed to do in the past. The cases cited respecting accidental prior use, and accidental effect, bear no relation to such a case as this.

Did the defendant pursue this method, as he alleges, prior to the patent? A good deal of testimony was taken to meet and determine this question. While the truth respecting it is not free from doubt, the weight of the evidence is, in my judgment, with the defendant. The circumstance that a different conclusion cannot be reached without imputing perjury, or something much like it, to witnesses who, so far as appears, are respectable men, is entitled to great, if not controlling, influence. The force of the criticism to which the testimony of these witnesses was subjected by the learned counsel has not been overlooked. It is not sufficient, however, to justify a disregard of their sworn statements,—a conclusion that they are untruthful and corrupt. Nor have I overlooked the circumstance that Speakman and Stott, employes of Guie, for a time, testify that the chloride of lime was washed out, and the consequent difficulty of reconciling this testimony with that of the defendant's witnesses. Nevertheless, as it was customary to wash the chloride out in manufacturing certain descriptions of paper, it is certainly possible that Speakman and Stott have gotten their present impressions from this circumstance. It is clear that their knowledge respecting the subject is much less than that of several witnesses who testify otherwise, and the probability that they are mistaken is consequently much greater. Indeed, it is quite clear that some of the defendant's witnesses cannot be mistaken. Their testimony can only be rejected upon the hypothesis that they are willfully and corruptly untruthful. It would be unprofitable to discuss the question at greater length. While the truth respecting it is involved in doubt, the preponderance of evidence is with the defendant.

This finding of fact is fatal to the plaintiff, and a decree must be entered accordingly.