NATIONAL METER CO. v. NEPTUNE METER CO. et al.

(Circuit Court of Appeals, Third Circuit. February 22, 1904.)

No. 14.

1. PATENTS—NOVELTY—WATER METERS.

The Nash patents, No. 527,534 and No. 527,537, for improvements in disk water meters, are void for lack of novelty, and also because the claims of the former are so broad as to cover practically everything in the prior art.

Appeal from the Circuit Court of the United States for the District of New Jersey.

For opinion below, see 122 Fed. 82.

J. Edgar Bull and Edmund Wetmore, for appellant.
Alfred W. Kiddle and William A. Redding, for appellees.

Before ACHESON, DALLAS, and GRAY, Circuit Judges.

ACHESON, Circuit Judge. This bill was brought to restrain infringement of two letters patent, No. 527,534 and No. 527,537, for improvements in disk water meters, granted on October 16, 1894, to the National Meter Company (complainant-appellant), as assignee of Lewis Hallock Nash. At the date of the making of the improvements in question, water meters of the disk type were old and in successful use. The structure described and shown in and by each of these patents, in shape, size, constituent parts, arrangement, and mode of operation, was old. The form and function of each of the constituent parts of the described structure are identical with those which had long been in common use prior to the alleged inventions. Moreover, all the ma-

-terials specifically mentioned in these patents had previously been employed in various combinations in the manufacture of water meters. The learned judge below, in the course of his opinion, after particular reference to certain prior patents, justifiably said:

"It will thus be seen that metals and nonmetallic substances of the character specified, for one or the other of the different parts of a nutating meter, have been freely suggested and employed by other prior inventors, until there is hardly a combination of them which could be devised that would be in any respect new."

Patent No. 527,534 is much the broader of the two patents in suit, patent No. 527,537 being merely for one species or a particular form of the alleged invention of the other patent. The following explanatory paragraph of the specification of No. 527,534 sets forth alleged advantages possessed by the described structure:

"The disks of nutating pistons heretofore made have been comparatively fragile and liable to break. By making the disk of metal I altogether avoid difficulty. However, if both piston and case were made entirely of metal, the friction and wear occurring would make the structure of little or no value as a practical water meter. As the principal friction surfaces are at the ball of the piston and its seat in the case, by making these parts of different materials—for instance, one of metal and the other of nonmetallic material—the friction and wear become very slight. Thus the maximum strength and the minimum friction and wear are obtained, and a durable and efficient meter is made. Such a piston can be used in any suitable case. If the piston, as I prefer to make it, have a disk of metal and a ball of nonmetallic material, it may be used in a case composed of any material or materials, for but little friction and wear will be developed in the ball bearing, even if the seat in the case be of the same or similar nonmetallic material—as, for example, if both be made of hard rubber. When the walls of the case as well as the disk of the piston are made of metal, while the seat and ball are either both of nonmetallic material, or one is of nonmetallic material and the other is of metal, the wear on the opposing metallic surfaces, particularly between the spherical walls of the case and the rim of the piston, will, other things being equal, be faster than at the other parts, and hence the weight of the piston will always be supported on the ball bearing, where friction is least, and friction contact between the edge of the piston and the spherical walls of the case avoided."

The specification contains the further statement:

"In the claims I employ the words 'coefficient of abrasion' to indicate the rapidity with which wear will take place between opposing surfaces."

The widest claims of this patent and the ones particularly relied on by the complainant are the first and second claims, and those only we deem it necessary to quote. They are as follows:

"(1) In a water meter, a nutating piston, composed of ball and disk, combined with a case provided with seats for the piston ball, the disk of the piston and the spherical walls of the case being composed of substances having a larger coefficient of abrasion than the substances composing the ball of the piston and its seats in the case.

"(2) In a water meter, the disk of a nutating piston and the opposing case walls, made of similar materials, combined with the ball of said piston and the ball bearings in the case, made of dissimilar materials."

The specification of patent No. 527,537 repeats the statement that:

"As the principal friction surfaces are at the ball of the piston and its seat in the case, by making the ball of metal and its seat in the case of a nonmetallic material the friction and wear become very slight."

The single claim of this patent reads thus:

"In a water meter, the combination of a piston composed of a ball and disk, both made of metal, with a case made of metal and a seat for the ball made of nonmetallic material."

The charge of infringement made against the defendants below (the appellees) is based upon their manufacture and sale of two slightly different types of disk water meters, the structures of both of which, in form, constituent parts, and method of action, are conformable to this art as practiced before the alleged inventions of the patents in suit. One of the meters complained of is constructed with an all-metal case having all-metal seats for the ball of the piston, and a metal disk having a rubber ball for its journal. The other meter complained of is made under the Thomson patent, No. 568,642, of September 29, 1896, and has for the lower bearing of the metal ball of the piston a skeleton of metal provided with concentric blocks of graphite mounted in recesses in the metal socket. The alleged infringement lies in the combined use of the materials mentioned. Do these constructions, or either of them, violate any exclusive rights vested in the complainant by virtue of the patents in suit? The conclusion of the Circuit Court was adverse to the complainant's pretensions, and we think rightly so.

According to the explicit statement of both the patents in suit, the principal place of friction is at the ball of the piston and its seat in the case. Upon this assumption the patents rest. It is the basis of the alleged invention. The problem was to secure the minimum of friction and wear between the ball of the piston and its seat. That being obtained, the invention is realized. The specification of No. 527,534 states that by making the ball of the piston and its seat in the case "of different materials—for instance, one of metal and the other of nonmetallic material—the friction and wear become very slight"; and "thus the maximum strength and the minimum friction and wear are obtained, and a durable and efficient meter is made." What the patents unmistakably prescribe is an antifriction bearing for the ball. But that was an old and common expedient in water-meter construction. This is abundantly shown by the evidence. The specifications here do not disclose any new means for reducing friction between the ball of the piston and its seat in the case. It was a well-known fact that friction and wear between a journal and its bearing can be reduced by making these parts of dissimilar materials. This principle was of common application in machine construction before the date of the alleged inventions. The nonmetallic materials specifically mentioned in the complainant's patents are lignum vitæ, hard rubber, and vulcanized fiber. Now, the use of lignum vitæ for precisely the same purpose is described in Nash's patent, No. 379,805, of 1888; and the use of hard rubber for a piston ball working in a metallic seat is described in the same patent, and also in the Davies patent, No. 384,024, of 1888, and the British patent to Davies, No. 13,571, of 1886. The prior Nash patent above mentioned discloses a water meter almost identical with the structure of the patents in suit composed of an all-metal case with an all-metal piston, or of a hard rubber case with a hard rubber piston; the ball of the piston, whether of metal or hard rubber, having for its lower bearing or seat a plug of

lignum vitæ. Upon a fair review of earlier patents, the judge below made the clearly warrantable deduction that the very combination of materials suggested in the complainant's patent is to be found in the prior art, not as a matter of accident or undesigned, but definitely and distinctly indicated and provided for.

The brief of the appellant puts forward the proposition that "the gist of the patents in suit resides in the discovery that the piston can be made to maintain automatically the necessary clearance at its rim by putting there materials which wear away or abrade faster than the materials forming the ball and its socket," and it is said that the invention consists in the "paradoxical expedient" of increasing friction and abrasion between the edge of the piston and the chamber walls. It is difficult, if not impossible, by searching, to find out anything in the specifications tending to support this ingenious theory. As we have already seen, the inventor states that the principal friction surfaces are at the ball of the piston and its seat in the case, and that, by making these parts of different materials, the friction and wear become very slight. "Thus," the specification goes on to say, "the maximum strength and the minimum friction and wear are obtained and a durable and efficient meter is made," and it is added that "such a piston can be used in any suitable case." It is true that further on in the specification occurs the rather obscure statement that:

"When the walls of the case, as well as the disk of the piston, are made of metal, while the seat and ball are either both of nonmetallic material, or one is of nonmetallic material and the other is of metal, the wear on the opposing metallic surfaces, particularly between the spherical walls of the case and the rim of the piston will, other things being equal, be faster than at the other parts, and hence the weight of the piston will always be supported on the ball bearing, where friction is least, and friction contact between the edge of the piston and the spherical walls of the case be avoided."

If, however, friction contact between the edge or rim of the disk of the piston and the walls of the case be avoided, there can be no automatic clearance by abrasion. There may be friction without abrasion, but there cannot be abrasion without physical contact. This is a self-evident proposition. Even the appellant's expert assents to this.

But furthermore we are convinced by the proofs that the theory of automatic maintenance of adequate clearance between the rim of the disk of the piston and the walls of the case by abrasion is incapable of practical realization. We think that the patents themselves are opposed to such theory. As we read the specifications, the main thing to be done is to minimize the friction and wear between the ball of the piston and its seat, to the end that the piston shall "always be supported on the ball bearing," and "friction contact between the edge of the piston and the spherical walls of the case be avoided." Aside, however, from the patents, the clear weight of evidence is against the realization, in practice, of the appellant's theory of operation. Mr. Thomson, an engineer and a manufacturer of water meters, out of his large experience testifies thus:

"I do not believe, nor have I ever seen in practice, nor have I ever seen a practical demonstration in which, once the periphery of the disk is brought into contact with the spherical wall of the casing, it will then automatically

produce 'an adequate clearance.' * * * No such result would be obtainable in practice.''

It is very significant that the complainant deliberately abandoned the construction shown and described in its patent No. 527,537. In its catalogue of 1900 it is said:

"A˙third plan is to use an all-metal disk, which is a combination long ago abandoned as being thoroughly unsatisfactory, both as to durability and close registration."

Moreover, it appears that the complainant had adopted and exclusively employs in its manufacture of disk water meters a construction in which the meter has an all-metal case, with all-metal sockets, and a piston composed of a hard rubber ball and disk, the disk being reenforced with metal embedded in and completely covered by the rubber, and shaped at its periphery into the form of a knife-edge composed wholly of rubber. Obviously, this construction is designed to diminish friction and wear between the rim of the piston and the chamber wall, not to increase friction and abrasion at that place. It will be noted that, in this construction, reliance is put upon the mechanical conformation of the periphery of the disk. This construction of disk water meters is made under a later patent, No. 527,539, granted to the complainant as assignee of Nash.

The claims of the patents in suit have an extraordinary sweep. They take in the whole range of substances or materials fit for water-meter construction whether heretofore used or not. They also embrace an unlimited number of combinations. The complainant's expert expressed the opinion that, "where the construction is such that the wear between the ball and its seat is less or more retarded than between the periphery of the disk and the inside wall casing, the alleged invention would be realized." He also expressed the opinion that a water meter of the knife-edge form of disk, made under patent No. 527,539, falls within the claims of the principal patent in suit, No. 527,534. If these views, which the appellant urges, be sound, and the defendants' water meters also are covered by those claims, it is safe to say that no practicable disk water meter can be made which could escape this monopoly, for an antifriction bearing at the ball of the piston is necessary to successful working—a fact which has always been recognized in this art.

We are of opinion that the learned judge below was entirely right in dismissing the complainant's bill, and the decree of the circuit court is affirmed.