AMERICAN ACETYLENE BURNER CO. v. KIRCHBERGER et al.

(Circuit Court of Appeals, Second Circuit. May 17, 1905. On Rehearing October 31, 1905.)

No. 159.

PATENTS—INVENTION—ACETYLENE GAS BURNERS.

The Shaffer patents, Nos. 617,942 and 634,838, for acetylene gas burners made entirely of refractory material, instead of metal with a refractory tip, do not show any novel mode of construction, but merely cover the substitution of one well-known material for another, and are void for lack of invention.

[Ed. Note.—For cases in point, see vol. 38, Cent Dig. Patents, § 23.]

Appeal from the Circuit Court of the United States for the Southern District of New York.

For opinion below, see 131 Fed. 94.

This cause comes here by appeal from a decree on final hearing dismissing bill alleging infringement of complainant's patents, No. 617,942, of January 17, 1899, and No. 634,838, of October 10, 1899, both granted to Henry E. Shaffer for improvements in Acetylene Gas Burners.

F. F. Church, for appellant.

Louis C. Raegener and S. L. Moody, for appellees.

Before WALLACE, TOWNSEND, and COXE, Circuit Judges.

TOWNSEND, Circuit Judge. In Kirchberger v. American Acetylene Burner Company, 128 Fed. 599, 64 C. C. A. 107, this court, affirming the decision in (C.C.) 124 Fed. 764, held that the burners of this complainant, claimed to be made under the patents here in suit, infringed this defendant's Dolan patent, No. 589,342. The claims in suit, Nos. 6 and 7 of patent No. 617,942, hereafter called the first patent, cover "a tip for acetylene gas burners composed of a single

piece of refractory material having the inlet and discharge passages at an angle with each other," or "at right angles to each other."

The Dolan patent showed curved metallic arms fitted with steatite tips having the inlet and discharge passages connected in a curved line.

In a burner manufactured by defendants prior to the Shaffer patent, and known as the "Napheys burner," the metallic arms supporting the steatite tips were angular instead of curved. The sole difference between this prior burner and that of the first patent in suit consists in the fact that in the former the angular turn was in the metal part, and in the latter in the extended steatite part, of the burner or tip. All that Shaffer did in effect was to lengthen the prior steatite tips so that both passages could be included therein. The two tips are structurally and mechanically identical, the single difference being that necessarily resulting from a change in the point of juncture between the metal and the steatite. It would seem from the testimony of complainant's own witness, Long, that this change, involving the angular arrangement, was both conceived of and suggested to Shaffer by Long.

The second patent, No. 634,838, chiefly relied on to support this appeal, covers not merely a tip but a complete "double-jet gas burner made entire of a single piece of refactory material, with divergent arms," passages, etc. The limitation upon the scope of this patent is well shown by the following statement in the specification:

"My invention relates to burners for acetylene gas having divergent arms provided with diverging gas-passages and converging gas-exits and suitable air-passages to produce a flat flame, such as have heretofore been made entire of metal and also with metal arms and separable refractory tips."

The patent, therefore, structurally covers merely the substitution of refractory material for metal, or metal and refractory material, in making the burners of the prior art.

But it is contended that this substitution of material involved invention for the following reasons, namely: The arrangement of the burner arms permitted the boring of the passages from the outside of the burner, thereby dispensing with the molding operation and consequent necessity for the use of plugs, as suggested and shown in the Dolan patent and other prior constructions, and thus provided a cheaper and more accurate burner.

The patentee further claimed that this construction obviated an objection necessarily attendant upon the use of metal burner arms with steatite tips, namely, the difficulty in adjusting the tips so as to insure a suitable alinement of gas exits and jets, and in thereafter maintaining them in such position by reason of the action of the heat on the metal. That is, as stated by counsel, the claim covers something more than substitution of material, namely, "burners made of refractory material in a certain way and of a certain construction, whereby they not only accomplish all the desirable results incident to the use of the material itself, but they can be readily and cheaply constructed." The patentee, however, says as follows:

"It was suggested in patent No. 618,239, granted me January 24, 1899, that burners of the character therein set forth might be made entire of refrac-

tory material. The present improvement relates to a distinct class of burners, which are adapted for and heretofore have been provided with refractory tips inserted in divergent arms and having gas-exits directed toward each other to produce a flat flame, the object being to remedy the before-mentioned defect in such burners."

In said earlier patent "the whole burner is preferably formed in a single piece of any suitable material such as lava, * * * the jet tubes are inclined toward each other as shown at an angle preferably of about forty-five degrees," and a comparison of the specifications and drawings of the two patents seems to show that in mechanical construction the burners belong not to distinct classes, as asserted by the patentee, but to the same class, and that they apparently operate substantially in the same way. No reason is shown why the securing of "a suitable alinement of the gas exits and jets," claimed to be secured by the one-piece construction of refractory material of the second patent in suit, would not also be secured by the preferable construction of lava suggested in patent No. 618,239. It is further contended that the invention of the second patent consisted, inter alia, in providing a one-piece burner with arms arranged to so diverge upwardly as to permit the gas and discharge passages and apertures to be bored therein up from the lower end of the arms and down in their faces, etc., so as to leave a structure with integral walls, and dispense with the use of plugs.

But there is nothing in the second patent to indicate that the patentee made or thought he had made any such invention. The only reference to boring in the patent is that of the air supply passages, and this has no relation to dispensing with the use of plugs. Some of the drawings show that it would be impossible to bore the gas passages in the manner now suggested without cutting off a portion of the lower end of the arms. If the burners of the prior art were thus cut off, the same result might be accomplished. The specification shows that the sole object of the invention was to provide by the substitution of a "burner body and arms of one piece of non-metallic refractory material" a construction "arranged to produce the desired form of flame with certainty and without testing and altering, as in the case of composite burners, and without danger of subsequent torsion by heat." The claims cover such construction to insure and maintain a "flat flame" or the "proper form of the flame." The file wrapper shows that the patentee originally claimed this particular form of construction of burner, made with or without metallic connections, and that he was forced to abandon these claims, to admit that said construction was "such as have heretofore been made," and to limit himself to such a burner, made from one piece of refractory material.

In these circumstances, we concur in the conclusion of the court below that the patents in suit merely covered the substitution of one well-known material for another. It is clear that said substitution developed no new uses or properties in the burner itself, and that no invention was required in making said change, but that it was the result of the exercise of mere mechanical skill.

The decree is affirmed, with costs.

### On Rehearing.

**PER CURIAM.** The petition for rehearing in this case has been seasonably filed, and while it is not printed, or supported by certificate of counsel, as provided for by the above rule, yet in view of the peculiar situation of the president of this petitioner, and his evident impression that the case has not been fully understood and properly disposed of, we have carefully re-examined the briefs and record in view of the arguments advanced in the petition. The assertions in support of patent No. 617,942 do not controvert the findings of the opinion as to the prior art and Long's testimony and need not be discussed. The case as to patent No. 634,838, the other patent involved in this petition, was argued by complainant on the former hearing, on the theory, as stated by its counsel, that:

"The invention of this patent further carries out the idea of the inventor in making a complete burner of the accepted type of a single piece of refractory material, thereby eliminating the use of metal entirely, excepting as a support."

The petitioner now says, inter alia, as follows:

"It was new to form a burner with two straight diverging arms at an angle of about 45 degrees without a crook, or an elbow, in the arms. It was new to drill gas passages in those arms. It was new to locate a mixing chamber in the side of each arm. It was new to locate the mixing chamber at the side of the inlet of the large gas supply. * * * A few words more as to the court's rendering of patent No. 618,239 which was invented after patent No. 634,838 and the patent papers were made out long after the application for the latter was made out, signed and sworn to by H. E. Shaffer. The court has seemed to treat of patent No. 618,239 as if it was patent No. 634,838. Patent No. 618,239 is of a solid bulb burner, its arms a part of the bulb, the bulb being a truncated cone. Every claim in this patent is in combination with a truncated cone or a gas reservoir, or both a gas hollow reservoir and truncated cone. The Shaffer burners are on a different plan, they do different and better work, cost much less money to make. * * * In patent No. 618,239 the discharge of gas is from the tip end of its converging tips. It has no arms in the sense that they are diverging arms, clear and away from its center stem. Its mixing chamber is in the end of the tip on a line with the tip, the same as in the Dolan and the Bullier, and all semi-Bunsen burners. * * * Compare this burner of patent No. 618,239 with patent No. 634,838, which is not even a bulb burner, it has no body, its arms are diverging arms, at about 45 degrees each. The mixing chamber is in the side of the arms instead of in the extreme tip end as in the former, and is in its entire construction directly the opposite in construction. This No. 634,838 patent burner must be of steatite, and the former may be. If there be a distinction between the east and the west, then there is the same difference between patents shown and described by patent No. 634,838 and No. 618,-239, as they are equally opposites. They certainly belong to different classes of burners."

That is, as to patent No. 634,838 it is asserted that patent No. 618,239, referred to by the court as earlier than No. 634,838, was in fact for a later invention. The record shows that although the original application for patent No. 634,838 was sworn to before patent No. 618,239 was applied for, yet the latter was applied for and granted before the application for No. 634,838 was filed. It is further asserted that the construction shown in No. 634,838 was new and constituted invention irrespective of the change in material.

When the president of this petitioner was examined on the trial of this case he was shown his Exhibit F, the burner from which the drawings of patent No. 618,239 were prepared, and his exhibit C, from which the application papers for the patent in suit, No. 634,838, were drawn up, and he then testified as follows:

"X-Q. 134. Now, coming to Exhibit F, this exhibit also has right angle tips, has it not? A. Yes. X-Q. 135. And the arrangement of the gas inlet and discharge passage and small aperture connecting them and the air inlets opening into the discharge passage, is substantially the same in this exhibit as in the others, is it not, referring especially to Exhibits C and E? A. Yes, sir. X-Q. 136. This Exhibit F also has diverging arms having diverging gas passages and converging gas exits and suitable air passages, has it not, or, if you object to the word 'suitable' we will leave that out of the question? A. No, sir. X-Q. 137. It has diverging gas passages and converging gas exits, has it not? A. Yes, sir. X-Q. 138. And inasmuch as you have testified that it was a success, you do not deny that it has suitable air passages, do you? A. No, sir; I do not. X-Q. 139. Do you object, then, to calling the two arms right angle tips in this Exhibit F 'arms'? A. They are not diverging arms. X-Q. 140. What kind of arms would you call them? A. They are called in the patent 'inclined jet tubes.' They are a solid part of the burner body, made with the burner body; there are no arms; are not intended for arms, but are attached and a part of the burner body, a solid piece."

These admissions coupled with the statements in patent No. 634,838 seemed to be conclusive. In view, however, of the new discussion of alleged differences of mechanical construction and of actual priority of invention in this petition it is thought that defendant should present its views as to the contention that the burner covered by patent No. 634,838 was for a totally different construction from any previously shown; that such construction, consisting in boring gas passages in the arms and changing the location of the mixing chamber, involved invention and is covered by the claims of patent No. 634,838 and that the inventions therein described were not anticipated or abandoned by reason of patent No. 618,239.

The clerk of this court is directed to send a copy of this petition to defendant and the defendant may have thirty days after receipt thereof in which to file a brief in reply to the above contentions.