## UNITED SHOE MACHINERY CORPORATION v. KAMBORIAN et al.

### No. 4153.

Circuit Court of Appeals, First Circuit.

March 13, 1947.

Stephen H. Philbin, of New York City (Charles E. Hammett, Jr., of Boston, Mass., of counsel), for appellant.

Richard F. Walker, of Boston, Mass. (Robert Cushman and Roberts, Cushman & Grover, all of Boston, Mass., of counsel), for appellees.

Before MAHONEY, GOODRICH (by special assignment), and WOODBURY, Circuit Judges, sitting.

GOODRICH, Circuit Judge.

Plaintiff, Kamborian, is the owner of patents used in the manufacture of shoes, and the other plaintiff, International Shoe Machine Corporation, is the sole licensee of Kamborian under the patents. The two patents sued upon are Numbers 2,251,284 and 2,254,224. The second patent is a process patent and was separated from the apparatus patent in the course of the journey of the latter through the patent office. Two claims only of each patent are involved.[1] The district court found that the patents were valid and infringed. The defendant on this appeal challenges the correctness of both findings.

The part of the process in shoe making dealt with by the patents has to do with what is known as lasting. In making shoes the upper portion of the shoe is stretched over a block (called a last in this industry) shaped in conformity with the human foot of the size for which the shoe is to be made. The last is then turned bottom upward and an insole, made of material appropriate to the type of shoe, is put on the last. The problem then is to find an economical and efficient method of pulling the edge of the upper far enough over the insole to stretch it to conform to the last and also far enough to anchor it to the insole. This done, the outer sole may be attached. The history of the development of the art is outlined in the opinion of the district court (62 F.Supp. 903 (D.C. Mass. 1945)) and will not be repeated here.

Kamborian has produced a machine which has greatly increased an operator's productive capacity to last shoes and the machine has met with commercial success. The defendant concedes that the Kamborian machine is a good one, at the same time saying that it has produced a good machine also. But the defendant says, further, that the Kamborian commercial machine is not the apparatus which is called for by the patents in suit. That machine, it says, will not function to produce the results desired

[1] Claims 26 and 28 of patent Number 2,251,284; and claims 13 and 19 of patent Number 2,254,224.

and it is only because the patent has been departed from that a successful machine has been brought out. It appears that Kamborian has a third lasting machine patent also. This patent is not before the court in this litigation, although it was mentioned by both sides in the briefs and argument. Anything said or decided in this case is not to be taken as indicating in any way our views upon the validity of this third patent nor the question of whether the defendant has infringed it.

We now turn to a consideration of the Kamborian device. The object to be accomplished is to stretch the upper snugly about the last and to secure the margin smooth and level against the surface of the insole. In Kamborian's words " * * * the marginal material of the forepart and sides is first drawn upwardly in a direction substantially perpendicular to the bottom of the insoles and then, * * * is wiped in over the edge of the insole into smooth contact with the latter; * * *." The perpendicular stress is supposed to come from two gripper rolls. These are small metal rolls preferably knurled so as to grip the material firmly. On these rolls appear helical ribs of opposite pitch and the helical ribs normally mesh as in an automobile with a gear drive. The wiping function which Kamborian describes is done by a rapidly reciprocating blade which smooths the material down over the insole. A wiper is not new and is not claimed to be new by Kamborian. What he claims is that the well known wiper used in conjunction with his rolls is a patentable combination and provides continuous movement of the material which is pulled up and patted down almost simultaneously. This is supposed to be especially valuable in making shoes from cloth where the upper is fastened to the insole by cement which can be applied in a heated state and which dries almost instantly.

The inventor had a theory about the process of pulling up the material of the upper by means of these rolls with their helical ribs. In his description he says that "as the gripper rolls * * * rotate, they exert a strong upward stress by reason of their helical ribs, tending to stretch the upper about the last."

This gets us to the heart of the controversy. Defendant says that the reason that Kamborian has a machine which will work is because in practice he has discarded certain parts of it described in his application. The result of discarding these parts, defendant says further, is to change the machine from one which is largely automatic in the manner in which material is fed to the machine, to a device that is largely a hand-tool which will work very satisfactorily if the hands are those of a skilful operator. The patent itself, defendant says, calls for a machine that will not work and the plaintiffs are not entitled to protection under a patent for a machine which does work when the patent calls for one which does not. If the defendant is right on his facts the rule of law which he cites in that connection is well established.[2] We must, therefore, examine with some detail the description which the inventor gives of his machine and the way he says it operates. It will appear clear, we think, that the controlling question in the determining of the controversy is whether the machine described in his patent operates the way Kamborian says it does, or whether its admitted success is due to something else, which is a variation of the machine the patent calls for. Let us then look to see what Kamborian has said.

As described by the inventor, the machine has on it two devices for keeping the last in position while the pulling up and pasting down process is going on. There is a bottom rest. This holds the piece of work in a horizontal position while it is pushed forward into the machine and secures it at the proper height. Then there are edge gauges against which the operator positions the side of the last. These edge gauges restrict the lateral motion of the last while it is being pushed through the machine. It is quite apparent with the direction of the piece of work guided as to

[2] Coupe v. Royer, 1895, 155 U.S. 565, 15 S.Ct. 199, 39 L.Ed. 263; International Burr Corp. v. Wood Grinding Service, Inc., 2 Cir.1929, 34 F.2d 905; Computing Scale Co. v. Standard Computing Scale Co., 6 Cir.1912, 195 F. 508; Manhattan Book Casing Machine Co. v. E. C. Fuller Co., C.C.S.D.N.Y.1912, 274 F. 964.

height by the bottom rest and from side to side by the edge gauges, its introduction into the machinery is pretty largely an automatic process with very little left for the operator to exercise judgment upon. While the shoe is in this position these rolls with the helical ribs are supposed to pull up the material and the wiper to smooth it down. Adhesive is introduced between the time of the lifting of the fabric by the rolls and its pressing down by the wiper.

Suppose we assume for the purpose of argument that the defendant is correct and that the rolls do not, as the inventor claims, "exert a strong upward stress by reason of their helical ribs." The question then comes, what makes the machine work successfully? The defendant says that it works because in a commercial machine the edge gauges are left off. When they are off the operator presents the shoe to the rolls in such a way as to get a pull from them. In the hands of a skilful operator the twist will not be so great as to prevent the wiper from working effectively. The apparatus, therefore, does what it is expected to do, but in a different manner and on a completely different theory from that which the inventor had in mind. At least this is the defendant's explanation of its rival's success with this machine.

The plaintiff says that whether he is right or wrong about his helical ribs he has produced a working machine which improved the art. These edge gauges, he says, are not called for in the claims of the patents he is suing on.[3] They are optional, he continues, and only were meant to be a sort of training device for inexperienced operators. It becomes apparent that one important question in the case must be whether Kamborian is bound by his description of the machine with these devices which prescribe how the work is to be presented to the rolls.

To reach the court's determination in this matter we shall turn back to the description given by the inventor when he applied for his patent. In doing so, we keep in mind the requirement of the statute. It requires an inventor to file a written description of his claimed invention in such terms as to enable a person skilled in the art to make and use it "and in case of a machine, * * * [to] explain the principle thereof, * * *."[4] The detailed description given in the Kamborian application is no amateur's job. The machinery is described in detail with drawings which are done with professional competence. The applicant makes clear the portions of the apparatus which are optional. For instance, he points out that a trimming knife and a clamping member are preferable though not necessary. He points out that the machine may be provided with a means for feeding adhesive to the work and where it preferably is delivered. When he talks about guide rolls he does not talk about them as alternative or preferable or with any other qualifying words. He says:

---

[3] A typical claim is No. 26 of patent Number 2,251,284 which reads as follows:

"26. Shoe lasting apparatus comprising upper stretching means and in-wiping means, the stretching means being designed and arranged positively to grip a narrow area of the margin of the upper and, after stressing the gripped portion of the margin in a direction substantially perpendicular to the last bottom, to release the gripped area while concomitantly gripping an adjacent area, the wiping means being constructed and arranged to wipe in each area of the margin only after such area has escaped from the stressing means."

[4] Rev.Stat. § 4888 (2d ed., 1878), 35 U. S.C.A. § 33:

"§ 33. Application for patent; description; specification and claim

"Before any inventor or discoverer shall receive a patent for his invention or discovery he shall make application therefor, in writing, to the Commissioner of Patents, and shall file in the Patent Office a written description of the same, and of the manner and process of making, constructing, compounding, and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art or science to which it appertains, or with which it is most nearly connected, to make, construct, compound, and use the same; and in case of a machine, he shall explain the principle thereof, and the best mode in which he has contemplated applying that principle, so as to distinguish it from other inventions; and he shall particularly point out and distinctly claim the part, improvement, or combination which he claims as his invention or discovery. * * *"

464

"The bracket arm 8 supports a secondary bracket 62 on which are mounted anti-friction guide rolls 63 and 64 (Fig. 1) designed successively to engage the outer surface of the upper at the forepart and shank portions respectively of the latter." [5] When he describes the way the machine works he says: "* * * Assuming that the margin of the upper has been gripped at a point near the toe, the anti-friction guide roll 63 engages the outer surface of the upper at the forepart of the shoe and at a point close to the edge of the insole. * * * After the operation has progressed until the shank of the shoe is reached, the guide roll 63 no longer engages the side of the shoe and the latter comes into contact with the guide roll 64 which continues to guide the work until the rear part of the shoe is reached, at which time the roll 63 may again come into action * * *." [6]

It is quite clear in reading the inventor's application as a whole what he had in mind. He had a perfectly integrated theory about combining these various operations into one in his machine. Its fundamental premise was the supposed upward pull of his helical ribs.[7] Based upon that premise the other parts of the machine fell into their proper places to make the combined whole which, had the theory been correct, would no doubt have operated with complete satisfaction. Still assuming the defendant's contention that this proved incorrect, the inventor then jettisoned certain parts of the described structure and came out with a machine which will do its job.

We think he cannot claim the protection of the patent on his inoperable machine for the different structure which does operate successfully. We are entitled to look to his descriptions and specifications and not to his claims alone.[8] The statute requires that the inventor describe how his machine works. Kamborian described the way he thought it would work, but actual working, if defendant is right on its facts, proves a different thing. It is undoubtedly the law that a man is entitled to the benefits of his invention whether his theory in explaining how he got his result is right or not. Thus if he describes a certain process and explains that the result is due to a given chemical change he is entitled to the benefit of the process even though the explanation of the result may be incorrectly stated.[9] But Kamborian's situation is quite different as the statute requires that he describe his machine and tell how to work it.[10] If it does not work as described, that it works some other way is not enough.

We think that the controlling question is whether Kamborian's helical ribs do what he said they do. We disagree with the learned district court's statement that if they do not Kamborian even then has produced a machine which conforms to his patent. Obviously, the question whether the rolls work as Kamborian says or as the defendant says, is a question of fact. Equally obviously, this court is not the tribunal to make findings of fact.

When we turn to the opinion of the district court we do not find findings of fact as directed by Rule 52(a) of the Rules of Civil Procedure, 28 U.S.C.A. following section 723c. There is, however, an opinion which contains statements of fact and dis-

---

[5] Kamborian patent Number 2,251,284, p. 2, second col., lines 54–59.

[6] Kamborian patent Number 2,251,284, p. 3, second col., lines 10–14 and 68–74.

[7] Kamborian patent Number 2,251,284, p. 3, second col., lines 15–17: "* * * As the gripper rolls 36 and 37 rotate, they exert a strong upward stress, by reason of their helical ribs, tending to stretch the upper about the last. * * ".

[8] Doble Engineering Co. v. Leeds & Northrup Co., 1 Cir.1943, 134 F.2d 78; I. T. S. Rubber Co. v. Panther Rubber Mfg. Co., 1 Cir.1919, 260 F. 934.

[9] Knick v. Bowes "Seal Fast" Corporation, 8 Cir.1928, 25 F.2d 442, 445;

Hemolin Co. v. Harway Dyewood & Extract Mfg. Co. et al., 2 Cir.1905, 138 F. 54, 55.

[10] 2 Walker on Patents (Deller's ed. 1939) 750 in conjunction with the above footnote illustrates the difference in the requirements of description for a process and a machine: "* * * The first provision [to explain the principle of the machine] means that the essential distinctive characteristic of the machine shall be explained; and the second provision [explain the best mode for applying the principle] means that the inventor shall state the mode which he contemplates to be the best. * * *"

cusses the district court's notion of the facts in his application of the law thereto. On this particular point, however, we do not find the facts stated with sufficient definiteness to answer the question which we think the fundamental one. The court says:

"Undoubtedly, while there is direct engagement of the cloth between the ribs there may be some such upward pull, but the pull, if any, on the material is not sufficient to completely tension the material to conform to the contour of the wooden last. Such additional tension as may be needed is provided by the operator who exerts pressure by pushing the last inwardly towards the body of the machine, or by presenting the work at an angle to the rotating gripping rolls."[11]

We think that this indicates that the Trial Judge thought that Kamborian's helical ribs do not grip enough to do the job claimed for them and, therefore, do not comply with the terms of the patent. We find corroboration of this in our examination of the record of the testimony. But in fairness to the inventor we do not think that we ought to take such a statement which could be argued to be equivocal as conclusive to determine what we regard to be the critical point of the case.

Is there an upward pull upon the material when the machine is operated as described by Kamborian? Does it come from the helical ribs? Is there "positive" gripping action which exerts an upward pull? Is there an upward pull by crimping as distinguished from a positive grip? Is the pull sufficient to do what is necessary to last the material? These are among the questions which have come to our minds in going over the problems of the case. We are not the ones to answer them.

We, therefore, must vacate the judgment and remand the case for such findings of fact by the Trial Judge as will give an explicit finding on this point. If the answer to the question is in the negative judgment may be entered for the defendant. If in the affirmative we think judgment should be for the plaintiff because

Kamborian will have been found to have produced a highly valuable invention and is entitled to its fruits. We do not think there is merit to the defendant's claim that it is not infringed. Upon this point we agree with the district court.

The judgment of the District Court is vacated, and the case is remanded to that court for further proceedings not inconsistent with this opinion.

---

[11] Kamborian et al. v. United Shoe Machinery Corp., D.C.Mass.1945, 62 F.Supp. 903 at page 905.