KAMBORIAN et al. v. UNITED SHOE MACHINERY CORPORATION.

Civ. No. 2751.

District Court, D. Massachusetts.

Oct. 6, 1947.

Charles S. Grover, Richard F. Walker and Roberts, Cushman & Grover, all of Boston, Mass., for plaintiff.

Edgar II. Kent, Fish, Richardson & Neave, of Boston, Mass. (Stephen H. Philbin, of New York City, of counsel), for defendant.

SWEENEY, District Judge.

This case comes back to this Court on remand from the Circuit Court of Appeals. The purpose of the remand was encompassed in the order of the Circuit Court of Appeals for this Court to take further evidence, so that an explicit finding might be made upon the question whether Kamborian's helical ribs do what he said they do in his patent application. See Kamborian et al. v. United Shoe Machinery Corporation, D.C., 62 F.Supp. 903, and United Shoe Machinery Corporation v. Kamborian et al., 1 Cir., 160 F.2d 461. Subsidiary to this main question, the Circuit Court of Appeals has posed the following questions, which will be answered in this opinion seriatim: "Is there an upward pull upon the material when the machine is operated as described by Kamborian? Does it come from the helical ribs? Is there 'positive' gripping action which exerts an upward pull? Is there an upward pull by crimping as distinguished from a positive grip? Is the pull sufficient to do what is necessary to last the material?"

At the hearing on remand, oral evidence was introduced by both parties, and certain operations of the Kamborian model machine (Plaintiff's Exhibit 14) and commercial cement lasting machine (Plaintiff's Exhibit 19) were made. In addition, quite a few exhibits were introduced, these being the products of the workings of both the model and the commercial machines.

In the previous opinion of this Court, the finding was made that "* * * while there is direct engagement of the cloth between the ribs there may be some such upward pull, but the pull, if any, on the material is not sufficient to completely tension the material to conform to the contour of the wooden last. Such additional tension as may be needed is provided by the operator who exerts pressure by pushing the last inwardly towards the body of the machine, or by presenting the work at an angle to the rotating gripping rolls." That finding is now completely abandoned as a result of the hearing on remand, and a finding governing the situation will appear later in this opinion.

At the hearing, several shoes and blocks of wood with leather attached thereto were run through the machines by a witness produced by the plaintiff. In addition, blocks with leather attached to the sides were run through the machine without human hands touching them. These blocks were channeled in a groove, the front part of which was made of glass, so that the action of the block as it went through the rolls might be observed. After the material had been inserted between the two cylinders there was no further manipulation of the block, but as its progress through the machine unaided in any respect was observed definite upward pull was noted.

Much of the defendant's argument in the previous hearings in this case was addressed to the point that the plaintiff had abandoned the edge rolls described in his patent, and by such abandonment permitted the operator to push back on the shoe while it was positively engaged between the two rolls, thus providing for tension. This matter was mentioned in my finding in the previous opinion quoted above, which is now abandoned.

Several shoes and blocks of wood were lasted at the hearing on remand with the work bearing against the edge guide roll at all times. The lasting was done satisfactorily with the edge guide rolls in place. As further evidence that the push back by the operator was not necessary, the groove guide with the glass front was used without any manual guidance, except for engagement of the cloth between the rolls. Clearly the gripper rolls pulled up, which means that they have the upward pull referred to in the patent. The defendant claims that the edge rolls, as used at the remand hearing, were not placed in the position described in the patent. There is nothing to this contention since the patent does not limit the position of the edge rolls. On the contrary, Fig. 8 of the patent

shows edge rolls at the bite of the gripper rolls. But Fig. 3 and Fig. 4 show them back of the gripper rolls. I therefore find as a fact that the abandonment of the edge guide rolls by Kamborian in no way contributed to the successful operation of his machine, and that the use of the edge guide rolls as described in the patent is accurate and operative.

Coming next to the question whether the wiper is the principal means for tensioning the cloth after it has been engaged by the gripper rolls, I have found that the rolls themselves exert an upward pull which tensions the cloth. It has been demonstrated that, by setting the wiper at varying heights, varied degrees of tension may be provided. Therefore, the tensioning done by the combination of the wiper and the gripper rolls is only to produce a stronger pull than the gripper rolls would exert without the wiper. In other words, working in conjunction with the gripper rolls which are exerting an upward pull, the wiper can control the degree of tension. But this does not mean that the wiper creates upward pull.

The defendant contends that, so far as the hold down which is described in the patent is concerned, it would be impossible to operate the machine with that hold down element. It further argues that the change to the hold down element provided in both the model and the commercial machines is such a departure from the patent as to make the machine inoperative, as described and claimed in the patent. I cannot find as a fact that a machine built strictly on the patent would be unworkable. I do find, however, that the change from the hold down element described in the patent to the hold down element used in both the model and commercial machines is such a simple and minute change as would occur to any mechanic.

We next come to the question whether crimping produces the only upward pull exerted by the gripper rolls. I am satisfied that it does not. I am satisfied that, independent of the actual crimping which takes place where the gears are in mesh, there is a separate and definite upward pull, even though it may be for the briefest time, but during that period when the knurled, meshed gears are operating in an upward spiral. It well may be that, without the meshing and the crimping, there would be no upward pull, but it has been demonstrated clearly that without the aid of any human hands the cloth will ride up the knurled helical ribs, thus producing the upward pull claimed in the patent. Although the defendant produced an eminent expert in the mechanical engineering field, who gave as his opinion that there could be no upward pull in the rolls of this machine, yet it was demonstrated that such upward pull actually occurred when the material was put through the rolls. The burden of proof where a defense of inoperativeness is interposed, as here, is heavily upon the defendant. That burden has not been maintained by this defendant. Remington Cash Register Co., Inc. et al. v. National Cash Register Co., D.C., 6 F. 2d 585. On the contrary, it has been demonstrated by practical experiments before this Court that Kamborian has succeeded in producing the results claimed by his patent.

### Findings of Fact

I find as a fact that there is upward pull upon the material when the machine is operated as described by Kamborian. I find as a fact that the helical ribs do provide some upward pull. I find that the positive gripping action of the meshed helical ribs exert some upward pull. I find that the crimping of the material between the spiraling ribs contributes to the upward pull, since the last to which the material is affixed is held in the hand of the operator and thus exerts no downward pull. The pull provided by the combination of the helical ribs and the wiper, provided for in the patent, is sufficient to do the necessary continuous lasting claimed by the invention.

### Conclusion of Law

I therefore conclude, as a matter of law, that the patents in suit fully describe an operative machine.

Judgment under the mandate is therefore to be entered for the plaintiff.