## UNITED SHOE MACHINERY CORPORATION v. KAMBORIAN et al.

No. 4344.

Circuit Court of Appeals, First Circuit.

July 16, 1948.

250

Stephen H. Philbin, of New York City (Edgar H. Kent, of Boston, Mass., on the brief), for appellant.

Charles S. Grover, of Boston, Mass. (Richard F. Walker and Roberts, Cushman & Grover, all of Boston, Mass., on the brief), for appellees.

Before MAGRUDER, GOODRICH (by special assignment) and WOODBURY, Circuit Judges.

GOODRICH, Circuit Judge.

This is the second appeal by the defendant in an infringement suit brought by a patent owner, Kamborian and his licensee. The subject-matter of the patents is a machine for performing the lasting operation on shoes, which is the process of stretching the leather or cloth of the upper over the insole and then connecting the edge of the upper to the insole. The description of the machine and the claims of the inventor are fully set forth in our opinion upon the first appeal reported, 1 Cir., 160 F.2d 461. They need not be repeated here. The inventor had won in the first trial in the District Court. We sent the case back for further consideration, for we were not clear from the findings which had been made whether the machine operated the way the inventor said it did, or whether its admitted success was due to something else. We posed several questions which we thought brought this issue into focus. See 160 F.2d 461, at page 465.

Upon the remand, the District Court heard witnesses, saw the machine operate and indeed operated it himself. With the additional learning thus acquired he set about to answer our questions. To the one which queried "Is there an upward pull upon the material when the machine is operated as described by Kamborian?" he replied: "I find as a fact that there is upward pull upon the material when the machine is operated as described by Kamborian." To the others which ran as follows: "Does it come from the helical ribs? Is there 'positive' gripping action which exerts an upward pull? Is there an upward pull by crimping as distinguished from a positive grip? Is the pull sufficient to do what is necessary to last the material?" he gave affirmative replies.[1] These answers are unequivocal and clear. If they are allowed to stand they settle the case in the plaintiffs' favor.

Defendant claims that the findings cannot be supported. It says further that the District Court's statement [73 F.Supp. 550] "The pull provided by the combination of the helical ribs and the wiper, provided for in the patent, is sufficient to do the necessary continuous lasting claimed by the invention," demonstrates that the Court found that the machine operated in a way not described by the patent since the application did not say the wiper was a tensioning aid. If the defendant is in error in these views we must affirm the judgment below since we think the evidence is clear that the defendant's machine infringes.[2]

[1] He said: "I find as a fact that the helical ribs do provide some upward pull. I find that the positive gripping action of the meshed helical ribs exert some upward pull. I find that the crimping of the material between the spiraling ribs contributes to the upward pull, since the last to which the material is affixed is held in the hand of the operator and thus exerts no downward pull. The pull provided by the combination of the helical ribs and the wiper, provided for in the patent, is sufficient to do the necessary continuous lasting claimed by the invention."

[2] Defendant says that the District Court's original finding on infringement is no longer sustainable in view of the finding that it is the wiper rather than the angle at which the operator presents the material which provides the additional tensioning required to do the job. We think the change in finding on what is the tensioning aid does not alter the conclusion on infringement. The District Court's finding was bottomed on the fact that in plaintiffs' machine the tensioning aid was the angle at which the work was presented, whereas the defendant's machine attained the result by using one roller disposed at an angle of 16° to the perpendicular. This was not a sufficient deviation to avoid infringement. The change of finding on what supplies the additional tensioning in the plaintiffs' machine, therefore, is of no legal significance on this point of infringement since all the points and factors of similarity relied upon by the District Court in its original finding still exist. See the dis-

An examination of the records reveals evidence to support the fact conclusions reached in answer to the questions we asked upon remand. The demonstration by the plaintiffs' witness showed that the gripper rolls with the helical ribs lift up the leather before it comes in contact with the wiper. The fact that defendant's expert witness says in an affidavit that he did not observe the lift is not conclusive since it is the trier's of fact observation which is crucial. At the trial, moreover, while the plaintiffs' lawyer read the specifications and instructions set forth in the patent application, a skilled operator followed the instructions and turned out an acceptable job. The question involved is purely factual and Rule 52, Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, is applicable. Kamborian is bound to show how his machine works but not why. He satisfied his burden when he showed the procedure whereby a shoe, not lasted when the journey through the machine began, comes out lasted in a manner described as "satisfactory" to "very good" in accordance with the directions in his patent. The physical or mechanical law which makes this machine operate in a certain way is interesting but is immaterial patentwise. White v. E. L. Bruce Co., 3 Cir., 1947, 162 F.2d 304; Eames v. Andrews, 1887, 122 U.S. 40, 7 S.Ct. 1073, 30 L.Ed. 1064; Diamond Rubber Co. v. Consolidated Rubber Tire Co., 1911, 220 U.S. 428, 435, 436, 31 S.Ct. 444, 55 L.Ed. 527. The research into pure science and the discovery of the physical laws which control the universe, may be more valuable socially than the process of invention. But it is the latter which is within the scope of the patent law system.

Our determination on whether the function of the wiper is adequately disclosed leads us to the language of the patent. Claims 26 and 28 of the apparatus patent are set forth in the margin.[3] We think these Claims when read with the specifications state the physical combination of the various mechanical elements and their functional interrelationship and operation in a manner sufficient to describe the function of the wiper. Claim 28 points out that the wiper engages a portion of the leather while "stress [by the gripping means] is being concomitantly applied" to another area of the leather. If the foregoing language is ambiguous or not definite enough, the meaning is made clear in the explanatory specifications. The specifications state that among the steps in attaining the object of the invention is that "the upper is progressively stretched from point to point along the edge of the insole with a concomitant wiping-in action also progressing from point to point along the edge of the insole."[4] The approximate position, furthermore, of the wiper is set forth in the specifications and the operation of the apparatus disclosure repeats that "the free end of the wiper member (44) [is brought into] position to engage the marginal portion of the upper just rearwardly (in the direction of movement of the last) of the point at which the gripper rolls grasp and stretch the upper." We think

cussion of similarity in Kamborian v. United Shoe Machinery Corp., D.C.Mass. 1945, 62 F.Supp. 903, 906.

[3] Claims 26 and 28 of patent number 2,251,284 read:

"Claim 26. Shoe lasting apparatus comprising upper stretching means and in-wiping means, the stretching means being designed and arranged positively to grip a narrow area of the margin of the upper and, after stressing the gripped portion of the margin in a direction substantially perpendicular to the last bottom, to release the gripped area while concomitantly gripping an adjacent area, the wiping means being constructed and arranged to wipe in each area of the margin only after such area has escaped from the stressing means."

"Claim 28. Shoe lasting apparatus comprising upper gripping means operative to seize a narrow area of the margin of the upper and positively to stress such margin in a direction substantially perpendicular to the bottom of the last thereby to stretch it snugly about the last, means operative to wipe in a narrow area of the marginal material which has already been stressed and released by the gripping means and closely adjacent to but spaced from a point at which said stress is being concomitantly applied, and means operative to cause relative movement of said stressing and wiping means and the last whereby the points of stressing and wiping progress along the edge of the insole."

[4] Patent Application Number 2,251,284, p. 1, line 30.

that the above Claim and specifications make it abundantly clear that the wiper is intended to be in such a position that it engages the leather before all of it has cleared the gripper rolls. Since its force is downward and the gripper rolls are exerting an upward force these opposite forces must necessarily result in a stretching of the material therein engaged. The adjustments in the wiper to alter the magnitude of the tensioning resultant are ones any mechanic would make when need therefor was indicated.

The judgment is affirmed.