INTERNATIONAL SHOE MACHINE
CORPORATION, Plaintiff,

v.

UNITED SHOE MACHINERY CORPO-
RATION, Defendant.

Civ. A. No. 56–1083–C.

United States District Court
D. Massachusetts.

June 17, 1965.

Richard F. Walker, Boston, Mass., for International Shoe Machine Corp.

H. L. Kirkpatrick, and W. R. Hulbert, Boston, Mass., for United Shoe Machinery Corp.

CAFFREY, District Judge.

This case was tried to the Court on the basis of a counterclaim filed by the defendant United Shoe Machinery Corporation as part of its answer in a civil action brought by plaintiff International Shoe Machine Corporation seeking money damages for alleged antitrust violations and International's answer thereto. The patent infringement case was severed from the main action for non-jury trial, while the antitrust case was tried to the Court and a jury and is reported at 1 Cir., 315 F.2d 449 (1963), cert. denied 375 U.S. 820, 84 S.Ct. 56, 11 L. Ed.2d 54.

Involved herein are United's claims that two of its patents have been and/or are being infringed by International.[1] The first patent involved is Quinn, et al, No. 2,397,369 issued March 26, 1946 (ex-

1. The parties settled alleged infringement of three other patents owned by United after certiorari was denied in the antitrust portion of this case.

pired March 26, 1963), and the second is Collins, No. 2,469,453 issued May 10, 1949.

With regard to the Quinn patent, defenses relied on by plaintiff International include non-infringement, invalidity, and equitable estoppel by reason of laches. The Quinn patent contains 45 claims and United is relying on Claims 1, 2, 13, 18, 21, 26, 29, 30 and 40 as being infringed by International's Side Lasters. This patent covers a side lasting machine. The Quinn patent describes a machine with a single inclined, continuously rotating roll and opposing curved sleeve extending partly around the roll which between them grips the upper margin of the leather being lasted and applies a frictional drag or frictional grip sufficient to successively updraw and then overdraw the tensioned margin, followed by a rotary wiper which presses the continuously moving margin of the upper down on to the shoe bottom where previously applied but still tacky pressure-sensitive cement holds the upper in place. United commercialized the Quinn machine in 1944 through its model PCL–A machines.

In prior litigation filed in this court by International against United, a finding was made by Chief Judge Sweeney that the PCL–A machines based on Quinn infringed certain patents owned by International or its principal executive, Kamborian. This litigation terminated favorably to International in 1948 and is reported United Shoe Machinery Corp. v. Kamborian, 1 Cir., at 160 F.2d 461, 73 F.Supp. 548, 169 F.2d 249, cert. denied 335 U.S. 885, 69 S.Ct. 237, 93 L.Ed. 424. The allegedly offending machines involved in the instant case are International's modified Model C Cement Lasting Machine and its Models A and B Thermalasters. The Model C Cement Lasting machine was commercially introduced in 1948. The Models A and B Thermalasters in 1954 and 1956 respectively.

█ United allowed approximately nine years to elapse between International's introduction of the Model C and its charging Kamborian with infringement by filing its counterclaim as part of the answer in the antitrust case in 1957. United now seeks to surmount the defenses of laches and estoppel by pointing to the fact that it was involved in lengthy antitrust litigation brought by the United States. The short answer to this is that the antitrust litigation, which is described in the opinion of Judge Wyzanski, reported United States v. United Shoe Machinery Corp., D.C., at 110 F.Supp. 295 (D.Mass.1952), aff'd. 347 U.S. 521, 74 S.Ct. 699, 98 L.Ed. 910, resulted in a determination that United had in fact violated the antitrust laws of the United States. For this reason United has no standing to rely on the fact that it was involved in that litigation as a defense to laches since the litigation was a direct product of its own tortious violation of the antitrust laws of the United States. But, even if United had been found innocent of the antitrust torts, I find on the basis of the evidence adduced during the trial of the antitrust portion of this very same case that United had ample financial resources and personnel, including its own patent law section, plus the patent law firm of Fish, Richardson & Neave, plus the large Boston firm Choate, Hall & Stewart and the even larger New York firm of Davis, Polk, Wardwell, Sunderland & Kiendl, with which to institute litigation charging International with infringement of the Quinn patent at any time during the pendency of the Government antitrust case. I find that there is no factual basis for its allegation that it was unable to do so. Its failure to do so appears more likely to be the result of a deliberate strategic decision to withhold bringing infringement litigation during the time it was charged in the Government suit with abusing the patent system.

█ It further appears that during the period 1948 through 1957 International made a substantial change in position consisting of its expanding its investment in the accused structures. During this period the total number of

these machines leased out by International to the shoe trade increased from less than 500 to more than 1,000, as a consequence of which United is equitably estopped from enforcing any rights it might otherwise have under this Quinn patent to monetary damages. Defendant United is not entitled to injunctive relief in any event in view of the fact that the Quinn patent expired in March 1963.

With regard to the Collins patent, No. 2,469,453, two claims are in issue herein, Claims No. 7 and No. 10, which provide as follows:

*Claim 7.* In a machine for operating on work pieces,
a work support,
a tool,
power-operated means for moving said work support relatively to said tool,
power-operated means for moving said tool relatively to said work support, and means for controlling said power-operated means including
a member movable by the operator along one path for starting one of said power-operated means in operation to move the work support in accordance with the direction and extent of movement of of the control member, said member being movable along another path to start the other of said power-operated means in operation to move the tool in accordance with the direction and extent of movement of the control member.

*Claim 10.* In a machine for operating on work pieces,
a work support,
a tool,
means for moving said work support relatively to said tool to move the work

progressively past said tool, means for moving said tool to vary its position relatively to said work support, a single operating member movable along two paths, means operated by said member in response to its movement along one path for controlling the first means to move the work support a distance depending upon the extent of movement of said member, and
means operated by said member in response to its movement along the other path to control the second named means to vary the position of the tool relatively to the work support.

The Collins patent is for a shoe machine called a "levelling" machine. In the course of manufacturing shoes, a partially completed shoe, including the outsole, on a last, is inverted and placed on a support, after which it is subjected to the action of a levelling roll which progressively rolls down the outsole of the shoe to conform to the shape of the shoe bottom as indicated by the shape of the last. To accomplish this the shoe, while on the last, must be moved backward and forward lengthwise under a roll which pushes down on the shoe and the last with great force. At the same time the operator of the machine may tip the roll left or right as the rolling motion is in progress so as to cause pressure of the roll to operate on all areas of the shoe or shoe bottom. The control lever, which normally is activated by the right hand of the machine operator, combines in a single handle movements of the machine in two paths. Movement in one path controls the speed direction and extent of movement of the work piece, whereas movement of the control handle in the other path controls the speed direction and extent of movement of the levelling roll. United's expert, Ryan, testified that the Collins machine was

never commercialized, that there was little demand for it in the trade, and that "there wasn't any percentage in it for United to spend that money."

The principal prior art patent cited to the Patent Office was Hart No. 2,230,-244, which provided for a machine in which one control lever moved the shoe support backward and forward beneath the roll while a second lever operated with the other hand tipped the roll left or right. The Hart machine necessitated the operator's using both hands for moving the work piece and the roll. The alleged invention in the Collins patent consists of combining the control of motions of both the work piece and the levelling roll in all desired directions in the one handle.

Assuming that there was a demand for a machine capable of being operated by only one hand, as to which I am not persuaded, there already was available in the public domain a source of information as to how this might be done. The Hart patent No. 1,541,712, granted in 1925, had expired three years before the Collins conception date of 1945. This showed how one lever could control two valves. It is worth noting that Hart machine gun patent No. 2,409,041 disclosed the use of a single control lever for controlling two servo-feed-back valves and their respective motors. This patent recited the information that it was "equally adapted to remote control of other devices, such as moving tools or the like in shoe machinery."

Also in the prior art was the De Tour patent No. 2,371,741, which was granted to United as an improvement on the Hart patent No. 2,230,244. This patent claimed to improve the Hart patent by the addition to Hart's forward and back roll-tipping lever arrangement of a precise arrangement for roll-tipping by crosswise motion of the control lever.

On the basis of the foregoing, I rule that the Collins patent, never commercialized, calls merely for a combination of old elements well known in the trade. It does not cover a far from obvious combination of old mechanical elements. It does not cover a combination which calls for more than the ordinary competence of those skilled in the art. Nor does it describe a combination in which the old elements unite so as to perform some novel function in addition to the separate functions of the component parts. See Abbott Machine Co. v. Universal Winding Co., 137 F.2d 166 (1 Cir. 1943); McCord Corp. v. Beacon Auto Radiator Co., 193 F.2d 985 (1 Cir. 1952).

The counterclaim is dismissed as to both patents. Judgment for the counterclaim defendant, with costs.