**Robert L. JONES and Labrado, Inc., Appellants,**

v.

**Alex HARDY, Appellee.**

**Appeal No. 83–900.**

United States Court of Appeals, Federal Circuit.

Feb. 8, 1984.

Robert E. Strauss, Newport Beach, Cal., argued for appellants.

Alex Hardy, Newport Beach, Cal., argued for appellee.

Before MARKEY, Chief Judge, and DAVIS and KASHIWA, Circuit Judges.

MARKEY, Chief Judge.

Appeal from a judgment of the United States District Court for the Central District of California holding the patents in suit invalid and dismissing pendant unfair competition claims. We *reverse* and *remand.*

### Background

In construction, some concrete walls have been cast in a horizontal containing form. A polystyrene plastic sheet with a design carved or cut into it, was laid in the form with the design uppermost. Concrete was poured into the form, and after it hardened, the wall was tilted upright and the sheet was removed, leaving a decorated concrete wall surface. The sheet tended to adhere to the wall. Its removal was done in pieces and presented methodology and time-consumption problems.

Robert L. Jones (Jones), in 1963 molded a design in a polystyrene sheet. After concrete poured on the molded sheet had cured, the sheet could be air blown off in one piece. He applied for and obtained U.S. Patents 3,515,779 ('779 patent) entitled "Mold and Method for Casting Concrete Panels", and 3,702,180 ('180 patent) entitled "Mold for Casting Concrete Panels". The '779 patent issued in 1970 and contains six product and four method claims. The '180 patent resulted from a continua-tion application. It issued in 1972 and contains six product claims. Jones granted a license under his patents to Labrado, Inc. (Labrado).

Independent product claim 1 of the '779 patent recites the combination of an outer frame structure of the containing form and a molded plastic sheet (a "mold") having a "molded intaglio pattern" of artistic relief, and a very limited but flex resistant thickness (from 0.005 to 0.2 times its length, i.e., a "thin face" mold). Claims 2–6 are dependent on claim 1 and add various details of the mold.

Independent method claim 7 recites the steps of forming a thin-face mold by molding a plastic foam against an artistic pattern, positioning the mold in a form, pouring concrete into the form, permitting the concrete to cure, and separating the form and mold from the concrete wall. Dependent claim 8 requires that the plastic be of cellular, expandable polystyrene beads of limited sizes. Dependent claim 9 adds the step of selecting the bead size of the polystyrene beads to control the texture of artistic relief in the concrete wall. Dependent claim 10 recites the added step of vibrating the concrete.

Independent product claim 1 of the '180 patent recites a thin-face plastic foam mold with an intaglio pattern of relief "molded therein". Dependent claims 2–6 add details of the mold.

The claims of the patents appear in the appendix to this opinion.

On August 23, 1974, Jones and Labrado sued Alexander Hardy and Vefo, Inc. (Hardy) for infringement and unfair trade practices. Hardy admitted infringement and defended on the ground that the patents were invalid.

On March 3, 1976, the district court granted Hardy's motion for summary judgment, holding the asserted claims (1–3, 5–8, and 10 of the '779 patent, and 1–4 and 6 of the '180 patent) invalid for anticipation. The court dismissed the pendant claims for unfair trade practices.

The Court of Appeals reversed in *Jones v. Vefo,* 609 F.2d 409, 204 USPQ 535 (9th

Cir.1979) and remanded for trial on the issue of whether the claims were invalid for obviousness.

After a two-day trial, the district court filed an opinion on November 24, 1981, in which the patents were viewed as invalid because Jones claimed "an inherent quality of a product long in use". The opinion said the pendant claims were dismissed. Though the opinion stated that "attorneys for defendant shall prepare findings of fact, conclusions of law, and judgment appropriate to this opinion", the record before us confirms that neither that nor anything else was done for over 15 months following the trial. Judgment was entered on March 9, 1983, "in accordance with" the November 1981 opinion. The judgment stated that the "patent" [sic] was invalid, that the pendant claims were dismissed, and that each party would pay its own costs and attorneys fees.

### Issue

Whether the district court erred in holding the patents in suit invalid.

### OPINION

Review of the opinion on which judgment was expressly founded establishes that the judgment was premised on legal errors, including: (1) nonconsideration of the invention as claimed; (2) disregard of the presumption of validity and burden of proof established by 35 U.S.C. § 282; (3) absence of the factual findings on the four inquiries mandated by *Graham v. John Deere Co.,* 383 U.S. 1, 17, 86 S.Ct. 684, 693–694, 15 L.Ed.2d 545, 148 USPQ 459, 467 (1965); (4)

application of an improper test under 35 U.S.C. § 103; and (5) nonconsideration of objective indicia of nonobviousness.[1] A judgment based solely on such fundamental legal errors cannot stand.

■ Nor has Hardy shown on appeal any basis on which the foregoing errors may be disregarded as harmless. Indeed, Hardy filed in this court a brief consisting of a single page.[2] On that page, Hardy misstates the issues as whether "strippability" of molded and cut foam is a matter of "degree", whether molded is "more economical" than cut foam, and "how obvious" it was "at the time the patent was granted" to "use foam" to form patterned concrete. With no record or authority citations, and no reference to specific prior art disclosures, Hardy says Jones relies only on "strippability" as "justifying the validity of his patents", that a reading of Hardy's cross-examination of two witnesses will divulge the inadequacy of that reliance, that there is "nothing unusual or not inherent in a process with a long history of prior art", and that Jones' witnesses upon cross-examination supported Hardy. Hardy's appendix reflects that cross-examination, which is devoted to irrelevant considerations, such as whether the claimed inventions are useful with every type of design, whether release agents have been used, and the economics of some installations, most of which was properly disregarded in the district court's opinion.

### 1. Claimed Invention

The invention cannot be tested on the basis of whether the "idea" of using molded

---

1. 35 U.S.C. § 282 provides in part:
   A patent shall be presumed valid. Each claim of a patent (whether in independent, dependent, or multiple dependent form) shall be presumed valid independently of the validity of other claims; dependent or multiple dependent claims shall be presumed valid even though dependent upon an invalid claim. The burden of establishing invalidity of a patent or any claim thereof shall rest on the party asserting such invalidity.

   35 U.S.C. § 103 provides:
   A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter

sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.

2. Hardy appeared here, *pro se,* as he did at trial. Vefo, Inc., a corporation without counsel, cannot be a party to the appeal. The district court is not without power to insure that its injunction, *infra,* is not evaded by use of an alter ego corporation.

polystrene foam is patentable. Under the patent statute, Title 35 U.S.C., "ideas" are not patentable; claimed structures and methods are. Reducing a claimed invention to an "idea", and then determining patentability of that "idea" is error. *W.L. Gore & Associates, Inc. v. Garlock, Inc.*, 721 F.2d 1540, 220 USPQ 303, 308–09 (Fed.Cir.1983). Analysis properly begins with the claims, for they measure and define the invention. *Aro Manufacturing Co. v. Convertible Top Replacement Co.*, 365 U.S. 336, 339, 81 S.Ct. 599, 600–601, 5 L.Ed.2d 592 (1961). Further, each claim must be considered as defining a separate invention. 35 U.S.C. § 282, *supra,* note 1; *Altoona Publix Theaters, Inc. v. American Tri-Ergon Corp.*, 294 U.S. 477, 487, 55 S.Ct. 455, 459, 79 L.Ed. 1005 (1935).

Both patents were characterized as relating to "a method" of constructing a concrete wall. The record contains no discussion of the individual product and method claims of the '779 and '180 patents. There is present an indication that the present invention is the use of a pattern formed by molding polystyrene foam against a positive design because all other aspects of the claim are well known in the art.

■ Though it is proper to note the difference in a claimed invention from the prior art, because that difference may serve as one element in determining the obvious/nonobviousness issue, it is improper (even if erroneously suggested by a party) to consider the *difference* as the *invention*. The "difference" may have seemed slight (as has often been the case with some of history's great inventions, e.g., the telephone), but it may also have been the key to success and advancement in the art resulting from the invention. Further, it is irrelevant in determining obviousness that all or all other aspects of the claim may have been well known in the art. *Medtronic, Inc. v. Cardiac Pacemakers, Inc.*, 721 F.2d 1563, 220 USPQ 97, 99–100 (Fed.Cir.1983). Hence the statute, the law established not by judges but by Congress, requires that the invention as claimed be considered "as a whole" when considering whether that invention would have been obvious when it was made. 35 U.S.C. § 103.

## 2. Presumption of Validity

■ A patent shall be presumed valid; that presumption attaches to each claim independently of the other claims. 35 U.S.C. § 282. The statute places the burden of proving facts establishing invalidity on the person asserting invalidity. The patent challenger must establish those facts by clear and convincing evidence, and the ultimate burden of persuasion never shifts from the patent challenger. *Medtronic, supra,* 721 F.2d 1563, 220 USPQ at 100.

The record reflects no mention of the presumption of validity, and Hardy suggested nothing from which it can be inferred that the presumption was at any time considered. Nor does there appear an indication that Hardy had or had not carried the burden assigned by 35 U.S.C. § 282. Nor is there reference to obviousness-indicating facts proved by clear and convincing evidence.

■ Contrary to 35 U.S.C. § 282, there was placed on Jones the burden of establishing validity, in substitution for the burden assigned Hardy by that statute. Error occurred in requiring that the evidence "persuade" the court of patentability:

> Although the evidence in this regard [that a molded face of styrofoam has less tendency to adhere to concrete than a carved face] is somewhat conflicting, in my view, the evidence preponderates in favor of this view, although it does not persuade me that there is any remarkable degree of difference.

■ The erroneous requirement that the court be persuaded of patentability was exacerbated by the expressed criterion that the evidence must reflect what would to a court appear to be a "remarkable degree of difference", a non-statutory requirement for patentability. *See Chore-Time Equipment Inc. v. Cumberland,* 713 F.2d 774, 781, 218 USPQ 673, 677 (Fed.Cir.1983); *Kansas Jack, Inc. v. Kuhn,* 719 F.2d 1144, 1150, 219 USPQ 857, 860 (Fed.Cir.1983) (re requirement for "synergism").

In evaluating testimony and evidence, it is error to focus on whether the patent owner has convincingly proved facts establishing the validity of the patent in suit. The '779 and '180 patents were in this case denied the statutory presumption of validity and an impermissible burden-shifting occurred.[3]

### 3. *Graham* Findings

*Graham, supra,* was cited but its guidance was not applied, resulting in the application of hindsight and speculation. The record contains no specific factual findings on the scope and content of the prior art, differences between the prior art and the claims at issue, level of ordinary skill in the pertinent art, or other indicia useful in determining the obviousness/nonobviousness question. No mention appears of any patented prior art. No factual determination appears on whether anything presented by Hardy was or was not more pertinent than the art considered by the Patent and Trademark Office (PTO). Nothing in the record indicates a focus on the state of the art "at the time the invention was made". 35 U.S.C. § 103. Indeed, the focus appears to have been on the time suggested here by Hardy, i.e., "at the time the patent was granted".

We must conclude, therefore, that whatever facts can be said from its opinion to have been found by the district court, they do not approach those required by *Graham* and they neither are nor need be challenged here. They are legally insufficient to support the appealed judgment.

### 4. Test Under § 103

The test under § 103 is not whether an improvement or a use set forth in a patent would have been obvious or nonobvious. The test is whether the claimed invention, considered as a whole, would have been obvious or nonobvious. 35 U.S.C. § 103; *Carl Schenck, A.G. v. Nortron Corp.,* 713 F.2d 782, 785, 218 USPQ 698, 700 (Fed.Cir.1983). Failure to consider the claimed invention as a whole is an error of law. *W.L. Gore, supra,* 721 F.2d 1540, 220 USPQ at 309 (error in considering claims in less than their entireties).

It was here erroneously concluded that: (1) "the discovery of a use of an inherent quality of a product well known in the art is not patentable because of obviousness;" and (2) "the discovery does not involve that degree of inventiveness which the courts have required."

The conclusion dealing with "an inherent quality" is in law a restatement of the earlier holding of invalidity for anticipation, a holding reversed by the Court of Appeals for the Ninth Circuit. 609 F.2d at 410, 204 USPQ at 537. The conclusion thus disregards the law of the case. Further, it confuses anticipation by inherency, i.e., lack of novelty, with obviousness, which, though anticipation is the epitome of obviousness, are separate and distinct concepts. *In re Pearson,* 494 F.2d 1399, 181 USPQ 641 (Cust. & Pat.App., 1974); *In re Oelrich,* 666 F.2d 578, 212 USPQ 323 (Cust. & Pat.App., 1981).

The first conclusion is based on conjecture that one skilled in the art would have noted that molded parts of carved or cut foam adhered less tenuously, a conjecture unsupported in the record as discussed, *infra*.[4] If that conjecture were accurate, it

---

**3.** It is not necessary that a district court declare a patent "valid". In a proper case, it is necessary only to hold that the patent challenger failed to carry the burden assigned to it by 35 U.S.C. § 282. When the evidence establishes that that burden was carried, the patent should be held invalid. *Environmental Designs, Ltd. v. Union Oil Co.,* 713 F.2d 693, 699, 218 USPQ 865, 871, n. 9 (Fed.Cir.1983).

**4.** The district court's opinion states:

It *seems clear* that any person working with polystyrene foam in concrete molds, even though he may not qualify as a skilled artisan, *would observe* that the molded surface of a polystyrene foam sheet has less tendency to adhere to concrete than a carved surface. Even with the use of foam sheets with the carved design, *some portions* of the uncut foam *would surely remain* whose comparative lack of adhesiveness *would have been apparent.* [Emphasis added]

Three sentences later, the paragraph ends with:

And, also, the *difference* between the adhesive qualities of the molded surface as against the carved surface *was not so sub-*

would not warrant a mental leap by which the posited observance would be converted into the making of the claimed inventions, an improper effect of hindsight occasioned by having learned what the inventor has taught. More would be needed, e.g. evidence establishing whether that observance had long and often occurred among those skilled in the art *without* suggesting to those persons the making of the claimed inventions. In any event, the conjecture is here undermined by Hardy's testimony that he used cut foam for at least eight years, and, though he was skilled in the art, neither the posited observance nor the mental leap occurred to him in all that time.

That Jones had not invented a molding process, and that molded plastic has a smooth outer skin, are insufficient bases for the view that "what plaintiffs are actually claiming is the discovery of a new use for an inherent quality of a product long in use in the trade". The difficulty is that that is not what the claims say. Further, the uncontradicted evidence establishes that the claimed product was never used in the trade before Jones invented it.

■ The "actually claiming" statement appears to have been occasioned by Jones' emphasis at trial on one of the *advantages* of the claimed invention, i.e., releasability or "strippability". But Jones is not "actually claiming" (in the patent sense) releasability. That the claimed invention has the asserted advantage in some installations is not actually contested. That the same advantage went unrecognized for years by users of cut foam and other means of forming relief designs in concrete walls argues for, not against, nonobviousness.

■ Further, as above indicated, treating the advantage as the invention disregards the statutory requirement that the invention be viewed "as a whole", ignores the problem-recognition element, and injects an improper "obvious to try" consideration. *In re Antonie,* 559 F.2d 618, 195 USPQ 6 (Cust. & Pat.App.1977). *Raffold Process Corp. v. Castanea Paper Co.,* 98

F.2d 355 (3d Cir.1938) was cited as involving "somewhat parallel" facts. In that case, however, the claimed invention (use of starch in paper making) lacked novelty, a controlling fact absent here. Lastly in respect of the first conclusion, the claimed limitation to a mold of very limited yet flex-resisting thickness was bypassed.

■ The second conclusion would engraft on § 103 a non-statutory requirement for a "degree of inventiveness." In addition, the requirement for a "flash of genius", quoted from *A & P Tea Co. v. Supermarket Equipment Co.,* 340 U.S. 147, 71 S.Ct. 127, 95 L.Ed. 162 (1950), was in disregard of the Court's description of that phrase as a mere "rhetorical embellishment" in *Graham, supra,* 383 U.S. at 15, 86 S.Ct. at 692, 148 USPQ at 466, note 7. *Reeves Instruments Corp. v. Beckman Instruments, Inc.,* 444 F.2d 263, 271, 170 USPQ 74, 80 (9th Cir.1971) was not cited, though the court there set forth the need to apply the approach of *Graham, supra,* and to consider all evidence in determining obviousness. *In re Fielder,* 471 F.2d 640, 176 USPQ 300 (Cust. & Pat.App.1973); *Jacobson Bros., Inc. v. United States,* 512 F.2d 1065, 185 USPQ 168 (Ct.Cl.1975).

Judges are not constitutionally empowered to legislate their individual subjective views respecting degrees of inventiveness, a distinct approach from that of determining validity on the basis of the evidence and procedural rules. What is required to uphold validity of a patent challenged under § 103 is what Congress in §§ 103 and 282 has said is required, namely, that the patent challenger shall have failed to show that the claimed subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art. 35 U.S.C. § 103.

### 5. Objective Indicia

■ Objective indicia of nonobviousness, when present, must always be considered *before* a legal conclusion under § 103 is reached. *Stratoflex, Inc. v. Aeroquip Corp.,*

*stantial as to alert anyone* working with the process to note the difference. [Emphasis added]

713 F.2d 1530, 1538, 218 USPQ 871, 879 (Fed.Cir.1983). Jones introduced evidence of long-felt need and commercial success. Hardy's admitted infringement constitutes some evidence of the merits of the claimed invention over the prior art praised but avoided by Hardy. The objective indicia evidence in the record not having been mentioned, we must assume that it was not considered before the legal conclusion of obviousness was reached. That was error.

### The Record

An appellate court's function is to review judgments, not opinions. As above indicated, however, the district court's opinion establishes that the judgment was in this case reached via a decisional path diverted by fundamental legal errors and unaccompanied by a path of reasoning and evidence upon which the judgment might be affirmed. Because the present legal errors lie at the heart of and control the decision on obviousness on which it rests, the judgment cannot stand.

Nor is it the function of an appellate court to engage in its own fact-finding exercise. Where the evidence is conflicting or credibility determinations are required, the judgment should be vacated rather than reversed, and the case should be remanded for further proceedings (not excluding a new trial if the district court deemed it necessary). The district court would then enter a judgment accompanied by fact findings reached in the absence of legal error.

The present litigation, however, has entered well into its tenth year. This is the fourth court proceeding. The parties have had more than ample opportunity to construct and have constructed a record. The probative facts necessary to decision are of record and are not in conflict. No credibility determination is required. Hardy, who admitted infringement and on whom rests the burden of establishing invalidity, has had two full and fair opportunities to do so. He has presumably submitted all evidence available to him. At the same time, Jones, who bore no burden on anticipation or obviousness, has undergone a summary judgment proceeding, a full trial, and two appeals. It can in this instance be truly said: enough is enough.

■ Our study of the record convinces us that Hardy failed to carry the burden of establishing that the claimed inventions in suit would have been obvious at the time those inventions were made. In the interest of judicial economy, and to avoid what would be an unnecessary retrial burden on the witnesses, the parties and the district court, we reverse the judgment that the claimed inventions would have been obvious.

In reversing the judgment here, on the ground that Hardy failed to carry his burden under 35 U.S.C. § 282, we make no finding of our own on any disputed fact question or credibility determination. We do note these *uncontradicted* facts established in the record:

(1) At the time Jones' claimed inventions were made, no known device fulfilled the need for easily releaseable means to impart three-dimensional patterns to the surfaces of concrete walls.

(2) Pattern imparting means distinct from Jones' inventions were disclosed as early as 1924 by Lake, U.S. Patent No. 1,623,625, and 1926 by Ham, U.S. Patent No. 1,598,132, both cited by the PTO, and other means by others at later times in the industry.

(3) The claimed inventions of Jones, and only those inventions, satisfied the need for easily releaseable pattern imparting means.

(4) The only direct evidence on the long established common practice in the industry was the expert uncontroverted factual testimony of Mr. John Nicoll, who spent 27 years as a technical advisor in the concrete industry. His testimony was that before Jones' inventions, no technique in use fulfilled the need for an economical means of duplicating designs in cast concrete walls. The means Nicoll described as then in use were rough hewn wood form liners, plaster molds, bush hammered designs, seeded and transferred aggregate, sand castings, and a plastic sheet laid over sand. Nicoll's uncontroverted testimony was that the need for

an economical means of casting artistic designs in concrete walls was addressed by many investigators before Jones, all without significant success.

(5) The claimed inventions have achieved commercial success on their merits.

(6) The ease and reduced time and cost of removing the molded foam from the concrete wall and the reuseability of molded foam caused its commercial success and are attributable to the claimed inventions.

(7) Hardy said he had employed carved or cut three-dimensional patterns in polystyrene foam liners on various jobs before he learned of Jones' claimed inventions. The claimed inventions were not obvious to him.

(8) The evidence is equivocal with respect to whether carved or cut foam liners were known or in use at the time the inventions were made. Accepting as we must the district court's opinion as stating a finding that they were, there is no evidence that their existence suggested the claimed inventions. The evidence, as indicated at (7) above, is to the contrary.

(9) Polystyrene foam form liners with carved or cut surfaces are difficult to remove from concrete walls. Witnesses testified without contradiction that sandblasting, hand picking, or chipping was necessary, and that it was necessary to wash the wall with a solvent to remove residue.

(10) The portion of the deposition of witness Vrana on which Hardy relies indicates that Vrana once accidentally failed to coat a table-sized area with a release agent and that it took only 20 minutes instead of 10 to remove the cut foam liner portion from that area. Vrana's testimony would at most indicate the irrelevant implication that the advantage of the shortened release time of molded foam liners is not as great when a petroleum base release agent or cure retarder material is employed. Though he spent twenty years in the industry and said he had used cut foam liners, Vrana had never cast concrete against a polystyrene foam where the entirety of the foam surface exposed to the concrete was molded, i.e. Vrana had never used the claimed invention.

(11) The molded polystyrene foam liners of the claimed inventions can be blown off the concrete wall with a jet of compressed air. In comparable applications, foam liners with a carved or cut surface were 13.5 times more difficult to remove than were liners of the claimed inventions.

(12) The difficulty of removing liners with carved or cut surfaces caused rejection of their use in construction of the Orange County Jail. An experienced polystyrene foam manufacturer, Marko Foam Products (Marko), prepared a polystyrene foam liner with a pattern for the construction of the Orange County Jail; Marko did not find it obvious to mold a liner but fabricated a liner in which the foam was cut; that liner adhered so tenaciously that Jones spent two days cleaning a concrete panel approximately 10 feet by 4 feet in area, and the contractor rejected the liners.

(13) Jones employed liners made in accord with the claimed inventions in the Orange County Jail construction; those liners did not adhere to the concrete, saved construction time, and enabled completion of the Orange County Jail on schedule.

(14) After learning of Jones' invention, Hardy sought to become a distributor of the patented products; denied that role, Hardy then copied the patented inventions, using tooling of the Roederffer Company which had abandoned its plans to copy the inventions in light of the patents; Hardy distributed a brochure that included photographs of buildings constructed with Jones' patented foam molds and photographs of one of those molds.

(15) All of the patented prior art of record had been fully considered and cited by the PTO. Those patents, and the carved or cut foam liners found by the district court, reflect the entire scope and content of the prior art introduced by and relied on by Hardy.

(16) The differences between the claimed inventions and the prior art are represented in an entirely molded, very thin, flex-resistant, design-bearing plastic foam sheet. Hardy introduced no evidence indicating that these differences did not exist.

(17) The level of skill in the art is represented by that of the construction engineers, experienced concrete wall erectors, and technical advisors to the industry who testified at trial. No other evidence on level of skill was introduced by Hardy.

### Remand

Remand is necessary to enable the district court to consider an injunction against further infringement, to conduct an accounting respecting damages, and to determine the issues raised in the pendant claims.

### Decision

Because Hardy failed to carry the burden assigned him by 35 U.S.C. § 282, the judgment appealed from is reversed and the case is remanded for further proceedings not inconsistent with this opinion.

*REVERSED AND REMANDED.*

### APPENDIX

The '779 patent:

1. A mold combination for casting a concrete wall comprising an outer frame structure defining the periphery of said wall with a first wall area and a first wall thickness, at least at one selected location on said first wall area an artistic mold having an unobstructed open face bearing an intaglio pattern of an artistic relief and secured to said first wall area against movement, said artistic mold comprising a generally flat, thin plate formed from a rigid and substantially non-compressible cellular plastic foam, having an area less than the said first wall area and from 0.1 to about 100 square feet and a thickness sufficient to resist flexing, between about 0.005 and 0.2 times its length and less than said first wall thickness, and having a substantially smooth face secured to said first wall area opposite said open face bearing said molded intaglio pattern of said artistic relief.

2. The mold combination of claim 1 wherein the artistic mold has an area from about 4 to 100 square feet.

3. The mold combination of claim 1 wherein the artistic mold is formed from expandable polystyrene beads.

4. The mold combination of claim 1 wherein the artistic mold is formed of a plyurethane [sic] foam.

5. The mold combination of claim 1 wherein the artistic mold is formed of a plastic foam having a compressive strength from 1 to about 20 p.s.i.

6. The mold combination of claim 1 wherein the artistic mold bears an adhesive on its substantially smooth face to secure it to said first wall area.

7. A method for constructing a concrete wall having an artistic relief on a surface thereof that comprises:

preparing a pattern of the artistic relief;

forming a cellular plastic foam mold by molding a cellular plastic selected from the class consisting of polystyrene, polyurethane and vinyl foams against said pattern to form a flat thin foam plate having a substantially smooth first face and bearing on its opposite face an intaglio impression of said pattern and having a thickness sufficient to resist flexing and from 0.005 to 0.2 times its length and greater than the desired depth of the relief in said concrete wall and an area from 0.1 to 100 square feet;

preparing a wall defining foam having a wall area greater than the area of said thin foam plate and a wall thickness greater than the thickness of said thin foam plate;

securing the smooth first face of said thin foam plate to a wall facing of the wall defining form at selected locations while permitting said opposite face of said thin foam plate unobstructed exposure in said wall defining form;

pouring concrete into said wall defining form and about and over said thin foam plate;

permitting said concrete to cure and form a rigid wall;

separating said wall defining form and thin foam plate from said concrete wall to obtain said wall with said artistic relief.

8. The method of claim 7 wherein said plastic is cellular expandable polystyrene

beads with diameters from 0.4 to 2.0 millimeters.

9. The method of claim 8 wherein artistic reliefs with varied texture are provided in said concrete wall by varied selection of the size of the polystyrene beads to mold said thin foam plate.

10. The method of claim 7 wherein said concrete is vibrated after pouring into said frame.

The '180 patent:

1. A mold for placing within a form for containing concrete and for creating artistic reliefs in concrete panels which are formed by casting concrete in the form and against said mold which comprises a generally flat, thin plate formed from a rigid and substantially non-compressible cellular plastic form, said plate having an area from about 0.1 to about 100 square feet, a thickness greater than the desired depth of relief in said concrete panel, sufficient to resist flexing and from about 0.005 to 0.2 times its maximum dimension; a substantially smooth first face for positioning against an inner face of said form, and on its opposite face an intaglio pattern of said artistic relief molded therein to a depth greater than the depth of the surface texture of said plate.

2. The mold of claim 1 having an area from about 4 to 100 square feet.

3. The mold of claim 1 formed from expandable polystyrene beads which are molded against a positive pattern of said relief.

4. The mold of claim 1 wherein said plastic foam has a compressive strength from 1 to about 20 p.s.i.

5. The mold of claim 1 formed of a polyurethane foam.

6. The mold of claim 1 bearing an adhesive on its substantially smooth face.

KASHIWA, Circuit Judge, dissenting in part.

I respectfully dissent in part.

I join all aspects of the majority opinion except for the discussion under the heading "The Record". Although the majority states that it is not making factfindings of its own, I believe otherwise. At a minimum, I would remand for factfindings by the district court on the obviousness issue.

I believe remanding this case for factfindings is the correct disposition since the district court failed to make proper factfindings regarding the tripartite factual determinations mandated by *Graham v. John Deere Co.,* 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1965). *Supra,* majority opinion at 1529 (The record contains no specific factfindings on the *Graham* factors). *See United Shoe Machinery Corp. v. Kamborian,* 160 F.2d 461, 464–65, 73 USPQ 1, 5 (1st Cir.1947), *cert. denied,* 335 U.S. 885, 69 S.Ct. 237, 93 L.Ed. 424 (1948); *see generally Pullman-Standard v. Swint,* 456 U.S. 273, 102 S.Ct. 1781, 72 L.Ed.2d 66 (1982).

I also disagree with the majority's characterization that "[t]he probative facts necessary to decision are of record and are not in conflict", and therefore, the obviousness issue of this case should be decided by this court "[i]n the interest of judicial economy". Among the 17 paragraphs of "uncontradicted" facts, many of which are undoubtedly uncontested, there are factual disputes which cannot be clearly or simply characterized as "uncontradicted." For example, the evidence regarding the level of ordinary skill was not clear. Mr. Plante, who testified in behalf of the appellants, stated:

[M]y view is that some of the witnesses you have had here would represent the level of skill in the art. I suppose that Mr. Vrana and Mr. Jones might well represent a somewhat higher level of skill, possibly, the higher level of skill.

But what I am saying is that people working in the building industry would be people who are out in the field handling these products.

This apparently is the extent of any evidence regarding the level of ordinary skill in the entire record.

Since the appellee apparently failed to present evidence on this issue and the district court failed to properly find facts, a remand is the correct procedure to either obtain additional facts or formulate proper factfindings. Instead, the majority improperly stepped into the province of the fact-

finder and formulated Paragraph No. 17. *See Cloud v. Standard Packaging Corp.,* 376 F.2d 384, 391, 153 USPQ 317, 322–23 (7th Cir.1967).