The UPJOHN COMPANY, Plaintiff,

v.

MEDTRON LABORATORIES, INC., Anthony Imbriolo, and Dominick J. Carlisi, M.D., P.C., Defendants.

No. 87 Civ. 5773 (SWK).

United States District Court, S.D. New York.

Sept. 1, 1992.

Kenyon & Kenyon by Thomas L. Creel, Richard L. DeLucia, Stuart D. Sender, Richard S. Gresalfi, Andrea H. Scheidt, New York City, Robert A. Armitage, Lawrence T. Welch, The Upjohn Co., Kalamazoo, Mich., for plaintiff.

Cooper & Dunham by Lewis H. Eslinger, William E. Pelton, Wendy E. Miller, New York City, for defendants.

## MEMORANDUM OPINION AND ORDER

KRAM, District Judge.

In this patent infringement action, brought pursuant to 28 U.S.C. § 1338(a), plaintiff The Upjohn Company ("Upjohn") seeks a permanent injunction enjoining defendants Medtron Laboratories, Inc., Anthony Imbriolo, and Dominick J. Carlisi (collectively "Medtron") from continued infringement of U.S. Patent No. 4,139,619 (the "619 Patent") and U.S. Patent No. 4,596,812 (the "812 Patent") and treble damages as a result of the infringement pursuant to 35 U.S.C. § 284. In findings of fact and conclusions of law dated October 19, 1990, this Court granted Upjohn's request for a preliminary injunction enjoining Medtron from manufacturing, selling or otherwise distributing the infringing product, MINOXIDIL PLUS, during the pendency of this litigation. *See Upjohn Co. v. Medtron Laboratories, Inc.,* 751

F.Supp. 416 (S.D.N.Y.1990) (*"Upjohn I"*), *aff'd without op.*, 937 F.2d 622 (Fed.Cir. 1991). Upjohn now moves, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for an order granting it partial summary judgment on its patent infringement claim and dismissing Medtron's counterclaims.

## BACKGROUND [1]

*Upjohn I* provides an extensive background of the history of the development of minoxidil, the product at issue in this litigation, as well as the issues central to this case. Familiarity with *Upjohn I* is assumed. In the interest of completeness, however, the Court will summarize the facts relevant to the instant motions.

In the 1950's, Upjohn began to experiment with a chemical in order to discover a treatment for ulcers. In 1963, as a result of these experiments, Upjohn created the chemical compound known today as minoxidil. In 1967, Upjohn filed an Investigational New Drug Application with the Food and Drug Administration ("FDA") in order to continue its research with minoxidil. Upon approval of the application, Upjohn signed a contract with Dr. Charles A. Chidsey ("Chidsey") in which Upjohn agreed to allow Chidsey to experiment with minoxidil in exchange for Chidsey's promise to assign to Upjohn any inventions that he made while working with the compound.

In early 1971, Chidsey discovered increased hair growth on patients who took oral doses of minoxidil. After consulting with an endocrinologist, Chidsey concluded that minoxidil was indeed the cause of the hair growth. Thereafter, Chidsey reported his discovery to Upjohn and then consulted with Dr. Kahn ("Kahn"), a dermatologist, and Dr. Grant ("Grant"), a medical resident working with Kahn.

In the spring of 1971, James Killinger ("Killinger"), an attorney for Upjohn, drafted a patent application (the "Upjohn Application") which claimed Chidsey as the only inventor of minoxidil as a topical treatment for male pattern baldness. Although the first four applications were denied by the Patent and Trademark Office. (the "PTO"),[2] Upjohn's fifth application was approved on February 13, 1979, and designated U.S. Patent No. 4,139,619.

After Upjohn began drafting this patent application, Kahn and Grant began testing topical minoxidil without FDA approval. Kahn and Grant subsequently met with Upjohn in order to report their findings and negotiate an interest in Upjohn's future sales of products containing minoxidil. After Upjohn refused to negotiate, Kahn and Grant hired an attorney to pursue their request for royalties. In response, Upjohn indicated its belief that Chidsey was the sole inventor as stated in the then pending Upjohn Application and that an interference proceeding[3] should be commenced at the PTO if Kahn and Grant wished to assert their inventorship.

On May 17, 1974, Kahn and Grant filed their own patent application with the PTO (the "Kahn Application"). In the Kahn Application, Kahn and Grant claimed that they were the sole inventors of topical minoxidil. The Kahn Application, like the Upjohn Application, encountered difficulty, as it was difficult to convince the PTO of minoxidil's utility.

On February 1, 1982, Kahn and Grant informed the PTO that the 619 Patent covered the same subject matter as their application. Thereafter, Kahn and Grant requested an interference proceeding to determine which application should be given priority. Although the PTO declared an interference between the 619 Patent and the Kahn Application, the interference pro-

---

1. Unless otherwise indicated, the following facts are undisputed and are taken from the parties' statements of undisputed material facts submitted pursuant to Local Civil Rule 3(g), the affidavits on file and exhibits attached thereto, and the testimony before this Court on June 18, 19, 21, 25 and 27 (the "June 1990 Hearing").

2. In light of many years of failed attempts to treat baldness by other inventors, Upjohn had

difficulty convincing the PTO examiner that minoxidil was effective in treating baldness.

3. Under 35 U.S.C. § 135, a board of patent interferences determines the priority of invention "whenever an application is made for a patent which, in the opinion of the Commissioner, would interfere with any pending application, or with any unexpired patent."

ceeding was never concluded as the parties negotiated a settlement. Under the terms of the settlement, Upjohn agreed to pay royalties to Chidsey, Kahn, and Grant regardless of the PTO's inventorship designation. On June 24, 1986, the PTO approved U.S. Patent No. 4,596,812, which named Chidsey and Kahn as co-inventors.

Upon resolution of the inventorship issue at the PTO, Upjohn began the process of gaining FDA approval. After nine years of testing topical minoxidil, Upjohn submitted the results to the FDA in a New Drug Application, which ultimately was approved. According to Upjohn, the company's extensive research and studies cost the company over $100 million prior to final approval of topical minoxidil, which was marketed as ROGAINE in 1988. ROGAINE is still the only FDA approved topical minoxidil solution on the market.

Despite the 619 and 812 Patents, Medtron has been manufacturing and selling topical compositions containing minoxidil. Upjohn claims that Medtron's activities render it liable for patent infringement. Although Medtron admits that it has infringed these patents, it contests the patents' validity. Specifically, Medtron claims that the patents are invalid for the following reasons: (i) Chidsey did not contribute to the invention of topical minoxidil, (ii) the PTO improperly changed inventorship on the 619 and 812 Patents, and, (iii) the patents are invalid for obviousness. Additionally, Medtron argues that the patents are unenforceable since Upjohn was guilty of inequitable conduct in its dealings with the PTO.

Upjohn now moves, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for an order granting it partial summary judgment on its patent infringement claim (First Claim for Relief) and dismissing Medtron's counterclaims. Medtron opposes the motion, arguing that each defense raises genuine issues of material fact requiring jury resolution.

## DISCUSSION

### I. Standard for Summary Judgment

Under Rule 56(c) of the Federal Rules of Civil Procedure, a motion for summary judgment must be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The moving party must initially satisfy a burden of demonstrating the absence of a genuine issue of material fact, which can be done merely by pointing out that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The nonmoving party then must meet a burden of coming forward with "specific facts showing that there is a genuine issue for trial," Fed. R.Civ.P. 56(e), by "a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. at 322, 106 S.Ct. at 2552.

The court "must resolve all ambiguities and draw all reasonable inferences in favor of the party defending against the motion." *Eastway Constr. Corp. v. City of New York*, 762 F.2d 243, 249 (2d Cir.1985); *see also Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–159, 90 S.Ct. 1598, 1608–09, 26 L.Ed.2d 142 (1970); *Hathaway v. Coughlin*, 841 F.2d 48, 50 (2d Cir.1988); *Knight v. U.S. Fire Insurance Co.*, 804 F.2d 9, 11 (2d Cir.1986), *cert. denied*, 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987). But the court is to inquire whether "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for the party," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986), and to grant summary judgment where the nonmoving's evidence is merely colorable, conclusory, speculative or not significantly probative. *Id.* at 249–50, 106 S.Ct. at 2510–11; *Knight v. U.S. Fire Insurance Co.*, 804 F.2d at 12, 15; *Argus Inc. v. Eastman Kodak Co.*, 801 F.2d 38, 45 (2d Cir.1986), *cert. denied*, 479 U.S. 1088, 107 S.Ct. 1295, 94 L.Ed.2d 151 (1987). To determine whether the nonmov-

ing party has met his or her burden, the court must focus on both the materiality and the genuineness of the factual issues raised by the nonmovant. As to materiality, "it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248, 106 S.Ct. at 2510. A dispute over irrelevant or unnecessary facts will not preclude summary judgment, *id.*, but the presence of unresolved factual issues that are material to the outcome of the litigation mandates a denial of the summary judgment motion. *See, e.g., Knight v. U.S. Fire Insurance Co.*, 804 F.2d at 11–12.

Once the nonmoving party has successfully met the burden of establishing the existence of a genuine dispute as to an issue of material fact, summary judgment must be denied unless the moving party comes forward with additional evidence sufficient to satisfy his or her ultimate burden under Rule 56. *See Celotex Corp. v. Catrett*, 477 U.S. at 330, n. 2, 106 S.Ct. at 2556 n. 2 (Brennan, J., dissenting). In sum, if the court determines that "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (quoting *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1969)); *see also Weg v. Macchiarola*, 654 F.Supp. 1189, 1191–92 (S.D.N.Y.1987).

■ Under the patent statute, "[a] patent shall be presumed valid.... The burden of establishing invalidity of a patent or any claim thereof shall rest on the party asserting it." 35 U.S.C. § 282. It is well-settled that the party challenging a patent must present "clear and convincing evidence" that the patent is invalid in order to defeat this presumption. *Jones v. Hardy*, 727 F.2d 1524, 1528 (Fed.Cir.1984) (citing *Medtronic, Inc. v. Cardiac Pacemakers, Inc.*, 721 F.2d 1563 (Fed.Cir.1983)). The Supreme Court has defined "clear and convincing evidence" as a standard lying be-

tween preponderance of the evidence and proof beyond a reasonable doubt. *Addington v. Texas*, 441 U.S. 418, 425, 99 S.Ct. 1804, 1809, 60 L.Ed.2d 323 (1979). Thus, the Court notes at the outset that Medtron must present facts which a jury could reasonably view as "clear and convincing" evidence that the PTO erroneously granted Patents 619 and 812 in order to survive Upjohn's motion.

## II. Validity of Patents 619 and 812

### A. Chidsey's Contribution to Topical Minoxidil

■ Under 35 U.S.C. § 102(f), a person is not entitled to a patent if "he did not himself invent the subject matter sought to be patented." Medtron first argues that Chidsey never played a role in the invention of topical minoxidil and, thus, the 619 Patent is invalid because, in 1979, it originally listed Chidsey as the sole inventor. The Court disagrees.

The issue of inventorship was addressed by the PTO in its decision to modify the 619 and 812 Patents to reflect the co-inventorship of Chidsey and Kahn. The PTO's determination that Chidsey was an inventor of topical minoxidil, a finding which is entitled to a presumption of validity, *see American Hoist & Derrick Co. v. Sowa & Sons, Inc.*, 725 F.2d 1350, 1359 (Fed.Cir.1984), *cert. denied*, 469 U.S. 821, 105 S.Ct. 95, 83 L.Ed.2d 41 (1984), is supported by evidence that Upjohn began processing the 619 Patent application, based upon Chidsey's discovery, before Kahn and Grant began their own experiments. *See* Plaintiff Upjohn's Response to Defendants' Second Set of Requests for Admissions, at 20. There is thus substantial uncontroverted evidence that Chidsey was a contributor to the invention of topical minoxidil.

In an attempt to overcome the PTO's determination, Medtron presents facts which tend to indicate that Chidsey was not the *sole* inventor of topical minoxidil. For example, Medtron states that Chidsey merely observed hair growth in patients who were administered oral doses of minoxidil. *See* Transcript of June 1990 Hearing, at 560. Further, Medtron argues that

Chidsey himself gave credit to Kahn and Grant for the concept of topical minoxidil. *See* Exhibit 6 to Exhibits to Defendants' Memorandum in Opposition to Plaintiff's Motion for Summary Judgment. Such facts, however, do not undermine the PTO's designation of Chidsey as a co-inventor of the final product, topical minoxidil. Rather, such facts, if credited, merely indicate that others participated in the invention of topical minoxidil, and are consistent with the PTO's ultimate finding that Chidsey and Kahn were the co-inventors of topical minoxidil and that a change of inventorship was proper. In no way do such facts tend to establish that Chidsey did not contribute to the invention of topical minoxidil. Accordingly, the Court finds that, as a matter of law, Medtron has failed to elicit facts from which a jury could reasonably determine that the evidence clearly and convincingly indicates that the PTO made an error in assigning *partial* inventorship to Chidsey.

### B. The PTO's Change of Inventorship on the 619 and 812 Patents

Medtron next argues that the PTO improperly changed inventorship on the 619 and 812 Patents. Specifically, Medtron argues that a jury could reasonably conclude that the PTO should have found both that Upjohn acted with deceptive intent in omitting Kahn from the existing 619 Patent application and that Kahn similarly acted with deceptive intent in omitting Chidsey from the pending 812 Patent application. Medtron's position is without merit.

Under 35 U.S.C. § 256, the designation of inventorship may be changed on an existing patent application. Specifically, 35 U.S.C. § 256 provides, in relevant part, that "[w]henever a patent is issued and it appears that a person was a joint inventor, but was omitted by error and without deceptive intention on his part, the Commissioner may, on application of all the parties and assignees ... issue a certificate adding his name to the patent as a joint inventor." Under 35 U.S.C. § 116: "[w]henever a person is joined in an application for patent as joint inventor through error, or a joint inventor is not included in an application

through error, and such error arose without any deceptive intention on his part, the Commissioner may permit the application to be amended accordingly, under such terms as he prescribes." Thus, in each instance, inventorship changes are permissible provided that the PTO finds an absence of deceptive intent.

The PTO's determination that an inventorship change was untainted by deceptive intent is accorded a presumption of correctness. *See American Hoist & Derrick Co.,* 725 F.2d at 1359. Thus, the party challenging the finding of the PTO must sustain the burden of overturning that finding either by presenting additional evidence not considered by the PTO or by showing that the PTO made errors of law. *Kloster Speedsteel AB v. Crucible, Inc.,* 793 F.2d 1565, 1571 (Fed.Cir.1986).

### 1. 619 Patent

In the instant case, the Court has already determined that Medtron has failed to "present any specific evidence to support an inference of deceptive intent" by Upjohn. *Upjohn I,* 751 F.Supp. at 427. In so concluding, the Court noted that Medtron's failure to adduce facts to support its charge against Upjohn comes after conducting extensive discovery directed toward uncovering evidence of deceptive intent. *Id.* Moreover, Medtron has ignored the fact that, given the PTO's determination, Medtron must present "clear and convincing evidence" that Upjohn was guilty of deceptive intent in filing its patent application. *See Jones,* 727 F.2d at 1528. Accordingly, the Court finds that, as a matter of law, Medtron has failed to sustain its burden of presenting "clear and convincing evidence" that Upjohn's deceptive intentions should void the 619 Patent.

### 2. 812 Patent

Medtron also argues that inventorship on the 812 Patent application was improperly changed as the result of Kahn's deceptive conduct. Specifically, Medtron charges that Kahn deceived the PTO in omitting

Chidsey from the 812 Patent application. Again, the Court disagrees.

In *Upjohn I,* the Court found, as a matter of law, that "Medtron has not carried its burden of demonstrating, by clear and convincing evidence, that deceptive intent motivated the decision of Kahn and Grant to exclude Chidsey." 751 F.Supp. at 427. Medtron has failed to produce any additional evidence on the issue of deceptive intent and thus fails to persuade this Court to revisit that finding. Accordingly, the Court finds that Medtron has failed to produce "clear and convincing evidence" from which a jury could reasonably conclude that the PTO should have found deceptive intent by Kahn.

## C. Non–Obviousness

Medtron also argues that the 619 and 812 Patents should be invalidated on the grounds that the topical application of minoxidil would have been obvious to a person having ordinary skill in the art. The Court disagrees and finds that Medtron has failed to present evidence from which a trier of fact could reasonably reach such a conclusion.

▇ The patent statute provides, in relevant part, that:

"[a] patent may not be obtained ... if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains."

35 U.S.C. § 103. In *Graham v. John Deere Co.,* 383 U.S. 1, 17–18, 86 S.Ct. 684, 693–94, 15 L.Ed.2d 545 (1966), the Supreme Court established a three-pronged test to determine whether a patent is invalid for obviousness. Specifically, a court must (1) determine the scope and content of the prior art; (2) ascertain differences between the prior art and the claims at issue; and (3) resolve the level of ordinary skill in the

pertinent art. *Id.* In addition, a court may consider as secondary factors the circumstances surrounding the origin of the subject matter sought to be patented, namely, commercial success, long felt but unsolved needs and the failure of others to meet those needs. *Id.*

### 1. Scope and Content of the Prior Art

Medtron contends that extensive prior art existed at the time of the invention of topical minoxidil. According to Medtron, prior art included vasodilating agents such as diazoxide, general knowledge about the effects of these agents in hair growth, and experimentation by Dr. Lester Baker, Dr. Peter J. Koblenzer, and Dr. Samuel H. Tucker.

▇ These arguments were presented to this Court during the June 1990 Hearing to determine the appropriateness of a preliminary injunction. In *Upjohn I,* this Court stated that, as a matter of law, none of the compounds presented by Medtron could be considered prior art. 751 F.Supp. at 424–25. Specifically, diazoxide could not be considered prior art because it was never recognized as an agent which could produce more than minimal hair growth. *Id.* Further, the studies by Drs. Baker, Koblenzer and Tucker were neither completed nor published.[4] *Id.* at 424. Accordingly, the Court finds that, as a matter of law, the 619 and 812 Patents are not invalid for obviousness as Medtron has failed to produce any evidence of prior art for the use of topical minoxidil as a safe and effective treatment for male pattern baldness.

### 2. Differences Between Prior Art and Topical Minoxidil

▇ Even assuming that any of the studies or diazoxide could be considered prior art, the Court finds that, for the reasons set forth in *Upjohn I,* the differences between the prior art and topical minoxidil are so significant and substantial so as to

---

**4.** Information that is not patented, published, publicly used or sold, or otherwise publicly dis-

seminated cannot be considered prior art. *See Upjohn I,* 751 F.Supp. at 424.

**1188**

preclude invalidity for obviousness as a matter of law. 751 F.Supp. at 425–26. Simply put, the studies referred to by Medtron and the knowledge of diazoxide prior to the invention of topical minoxidil fail to suggest a safe and effective treatment for male pattern baldness.[5]  *Id.*

### III.  Enforceability of the 619 and 812 Patents

Medtron asserts that, even if the 619 and 812 Patents are valid, the Court should find them unenforceable as a result of inequitable conduct by Upjohn.  Specifically, Medtron argues that Upjohn should have disclosed diazoxide as prior art to the PTO, revealed to the PTO the conflict between Kahn, Grant, and Chidsey, and divulged to the PTO the fact that Chidsey did not play a role in the invention of topical minoxidil.

The Court's June 1990 Hearing was held, in part, to determine the validity of Medtron's charges of inequitable conduct against Upjohn.  After hearing extensive evidence, the Court concluded that "[Medtron] has not presented much more than a motive—the avoidance of royalties—which is based on supposition." *Upjohn I,* 751 F.Supp. at 429.  Moreover, the Court concluded that "the evidence does not approach proving by clear and convincing evidence that [Upjohn] acted with deceptive intent." *Id.*  The record currently before the Court is identical to the evidence presented at the June 1990 Hearing.  Additionally, Medtron's argument that Upjohn should have informed the PTO that diazoxide was prior art must fail as the Court concludes that diazoxide cannot be considered prior art.  Similarly, Medtron's contention that Upjohn should have informed the PTO that Chidsey did not contribute to the invention of topical minoxidil fails since the Court determines that Chidsey is a joint inventor with Kahn.  Accordingly, the Court finds that, as a matter of law, the 619 and 812 Patents are not unenforceable for inequitable conduct.

### IV.  Medtron's Counterclaims

In its amended answer to the amended complaint, Medtron seeks a declaration that the 619 and 812 Patents are invalid, void and unenforceable (First, Second and Third Claims for Relief), and seeks recovery against Upjohn for restraint of trade under the Sherman Act, 15 U.S.C. §§ 1–2 (Fourth Claim for Relief), and violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.*  (Fifth Claim for Relief).

Upjohn moves for an order granting it summary judgment dismissing Medtron's counterclaims.  As these claims are each based upon the invalidity and enforceability of the 619 and 812 Patents and because the Court has determined that the 619 and 812 Patents are valid and enforceable, Upjohn is entitled to an order dismissing Medtron's counterclaims for reasons virtually identical to those warranting summary judgment upon Upjohn's patent infringement claim.

### CONCLUSION

For the reasons set forth above, Upjohn's motion, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for an order granting it summary judgment on its patent infringement claim (First Claim for Relief) and dismissing Medtron's counterclaims (First through Fifth Counterclaims for Relief), is granted.  There being no just reason for delay, the Clerk is hereby directed to enter judgment accordingly.

SO ORDERED.

---

**5.** In fact, Medtron has failed to present any relevant objective evidence tending to show that the development of topical minoxidil was obvious.